Vol. 111]  APRIL TERM, 1901.  491

Barfield, &c., v. Gleason, &c.  Kimberger, &c., v. Bitzer, &c.

CASE 49—ACTIONS TO ENFORCE LIENS FOR STREET IMPROVEMENT—
JUNE 22.

# Barfield, &c., v. Gleason, &c.
# Kimberger, &c., v. Bitzer, &c.

### APPEALS FROM JEFFERSON CIRCUIT COURT.

JUDGMENT FOR PLAINTIFFS AND DEFENDANTS APPEAL.  REVERSED.

STREETS—CONSTRUCTION—ASSESSMENTS—CONSTITUTIONALITY—SPOLIA-
TION—DUE PROCESS OF LAW—BENEFITS—PRELIMINARY HEARING—
GRADE—CHANGE—INJURY—COMPENSATION—CITY EXECUTIVE
BOARD—PASSAGE OF ORDINANCE—TIME—RECORD—CONTRADICTION—.
REPAIRS—COST—BID—INCLUSION—PRIMA FACIE CASE—NECESSITY
OF IMPROVEMENTS—RELEASE OF CONTRACTOR—APPELLATE JURISDIC-
TION.

Held: 1. The mere grading of a dirt road so as to form a crown, and
to leave depressions at the sides for surface drainage, and the
leveling of inequalities, does not constitute a street construction.

2. Kentucky Statutes, section 2838, providing for the original con-
struction of streets in cities of the first class at the exclusive
cost of the owners of abutting property according to area, is not
unconstitutional.

3. A street assessment will not be held to be an arbitrary and un-
constitutional taking of property merely because the benefits
from the street are not commensurate with the cost, as the Legis-
lature has a large discretion in defining the property deemed
to be specially benefited, and the courts will not interfere, ex-
cept upon a showing of fact so conclusive as amply to justify
their interference.

4. The fact that a State statute providing for the original construc-
tion of streets at the exclusive cost of the owners of abutting
property according to area makes no provision for a preliminary
hearing as to the extent of special benefits to each piece of
property resulting from the improvement, does not render it
violative of the fourteenth amendment to the Constitution of the
United States.

5. Under Constitution, section 242, providing that "municipal and
other corporations, and individuals, invested with the privilege
of taking private property for public uses, shall make just
compensation for property taken, injured or destroyed by them;

492　　　　KENTUCKY REPORTS.　　　[Vol. 111

Barfield, &c., v. Gleason, &c.　Kimberger, &c., v. Bitzer, &c.

which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction,"—an ordinance for a street improvement is not void because it fails to provide for compensation for the injury to abutting property from the excavations necessary to be made to conform the street to the grade theretofore fixed by the city council, as a statute or ordinance which results in injury to property is not unconstitutional because it fails to provide for compensation to be made for the injury before it is done.

6. Though the change in the grade was unnecessary, and might have been prevented by injunction, and though the excavations necessary to conform to the grade might have been prevented until compensation had been provided for the injury to be occasioned thereby, yet, as neither of these things was done, the defendants in an action by the contractor to enforce his lien can not have the cost of the excavation, which has been included in the assessment, apportioned among them, and recover against the city the amounts apportioned, the remedy being an action at law to recover the damages which have actually accrued from the change of grade.

7. The making out of an apportionment warrant is not the levy of a tax, and may be performed by an executive board.

8. A statute providing for the construction of streets at the cost of abutting property owners is not unconstitutional because it does not require the contract for such construction to be approved by the city council, as that is a ministerial act, and may be entrusted to an executive board.

9. All the requirements of the statute necessary to create a lien having been complied with, the fact that the apportionment warrants were not approved by the mayor and council, as required by an ordinance, does not affect the validity of the lien.

10. The records of the council showing that an ordinance was passed by the two boards on different days is conclusive of that question, and can not be overcome by the recollection of a witness; and, besides, the statement of a witness that an ordinance was passed by both boards on the same night may be consistent with the proper passage of the ordinance by one of the boards at a subsequent date, which is a sufficient compliance with Kentucky Statutes, section 2777, providing that an ordinance shall not be passed by both boards on the same day.

11. Where the contractor was required by the contract to keep the street in repair for five years, and, in order to secure that undertaking on his part, was required to deposit bonds amounting to ten per cent. of the contract price, it will be presumed that this

provisiion did not increase the cost of the improvement beyond the ten per cent. as the court of appeals had previously construed such a provision in a street-improvement contract as binding the contractor only to that extent for repairs, and it must be presumed that plaintiff contracted with reference to that construction.

12. Proper averments of the steps leading to the creation of a lien, supported by the exhibits required to make out a *prima facie* case, entitle plaintiff to a judgment in the face of a mere denial as to the fixing of the grade of the street.

13. After the work is done, the legislative determination of the council that the improvement was necessary will not be disturbed, except upon a showing of abuse of discretion so conclusive as to amply justify the interference of the court.

14. Where the city, without good cause, released an accepted bidder, who had given bond with solvent surety, and the bid accepted upon a second advertisement, though the lowest one then made, was considerably higher than that of the released contractor, the property owners are entitled to judgments over against the city for the difference.

15. As the lien of the contractor is enforceable in a single suit against all the landowners, and the court of appeals has jurisdiction of an appeal from the judgment enforcing that lien, it will retain jurisdiction of the appeal for the purpose of giving the appellants relief against the city, so as to do justice between the parties, though the claim of each appellant against the city may be less than $200.

W. W. THUM AND STANLEY E. SLOSS, FOR APPELLANTS.

We have heretofore filed briefs in these cases, and at the last moment before the oral argument, we take this opportunity to file a brief involving a full presentation of all the questions involved under the comparatively recent decision of the supreme court of the United States in the case of Norwood v. Baker. The application of that case to the Kentucky system seems convincing, and we feel satisfied that under that decision the assessment levied upon the property of appellants in this case, is unconstitutional, unenforceable, and void because the assessment is not based upon benefits to appellants' property.

### POINTS AND AUTHORITIES.

The delegated power of taxation for local improvements is subject to a strict construction.   Washington Ave. Case, 68

494            KENTUCKY REPORTS.            [Vol. 111

Barfield, &c., v. Gleason, &c.   Kimberger, &c., v. Bitzer, &c.

Penna. St., 362; Loan Association v. Topeka, 20 Wallace, 655; Lexington v. McQuillan's Heirs, 9 Dana, 513.

The property of the appellants was injured, and the assessment amounts to spoliation.   Howell v. Bristol, 8 Bush, 494; Preston v. Rud'd, 84 Ky., 150; Louisville Rolling Mills v. City of Louisville, 3 Bush, James v. City of Louisville, 19 Ky. Law Rep., Cheaney v. Hooser, 9 B. M.

Injuries resulting from a change of grade are included in this. Henderson v. McClean, 19 Ky. Law Rep., 1450; Hegan v. City of Louisville, 20 Ky. Law Rep., 1532; Harris v. City of Louisville, 20 Ky Law Rep., 1535.

Where an injury is done, compensation must be secured or paid in advance under the Kentucky Constitution.

Constitution, sections 13 and 242 and the cases cited on page three of the points and authorities of our first brief.

Section 2831 of the 1894 Kentucky Statutes is the only law on this subject.    There can be no recovery unless the work is done within the time specified, and the proof in this case shows that on the Northern block this was not done.    Neel v.   Gates,   54   S.   W.,   460;   Mappa v.  Los  Angeles,  61 Cal., 460.

For a part of the Southern block, no grade was established, and there can be no recovery.   Zable v. Baptist Orphans' Home, 92 Ky., page 89.

The assessment sought to be enforced herein is for the regrading and paving of a street which had already been graded and opened.    Benefits to the adjacent property by it result when the street is originally opened and made.    And for a reconstruction or repaving of the street, there can be no charge imposed upon abutting property.   Hamett v. Philadelphia, 65 Pa. St., 146.

A large part of the costs in this case is shown to have been incurred for cutting down the street—over a thousand dollars on each block, and this cut is shown to have been made in order to accomplish the drainage or sewerage of the district, and not at all, in the proper construction of the street as a street.    The charter does not authorize the assessment of the costs of sewerage upon the abutting property, and there can be no recovery for this.   *In re* Sewer on Boggs Ave., 30 Pa. Legal Journal, page 18; Bayonne v. Morris, 51 N. J. L., 127; Frantz v. Jacob, 88 Ky., 525.

This whole contract was based upon a fraudulent purpose on the part of Mr. Nevin, of the Board of Public Works, to get rid of McNaughton and secure the valuable contracts sought to be enforced in this case for his friends and relatives, Glea-

Vol. 111]          APRIL TERM, 1901.          495

Barfield, &c., v. Gleason, &c.  Kimberger, &c., v. Bitzer, &c.

son, as contractor, and Bannon, as brick manufacturer.. Fraud vitiates the entire contract. 1 Dillon on Municipal Corporations, 311; Brady v. Bartlett, 56 Calif., 250; Providence Tool Co. v. Norris, 2 Wall., 45.

The street is very bad, both in construction and in plan, is wearing out badly, the foundations are settling, and the street holds water on its surface in the depressions thus formed.     It was not needed, it was not desired, it was not an improvement to the abutting property, but a public road of such a character as that which this court held should be charged to the city at large.  Frantz v. Jacob, 88 Ky., 525.

The property owners protested against it and objected to its being made and this constitutes a defense.     The provisions of the Kentucky Statutes with regard to a *prima facie* case are unconstitutional:  Johnson v. Ferrill, 8 Ky. Law Rep., 216; and the plaintiffs below took no proof to sustain ninety-five per cent of the material allegations of their petition.

Gleason was not the lowest and best bidder.  McNaughton had executed bond, with good surety, faithfully to perform his contract.   The surety is solvent and could have been compelled to perform the work.   The release by the city of Mc-Naughton and his surety has no effect upon this contract, so far as the property owners are concerned, and McNaughton is still the lowest and best bidder.  Schumm v. Seymour, 24 N. J. E., 145; McQuiddy v. Brannock, 70 Mo. App., 535; Mackenzie v. Baraga Township, 39 Mich., 554; Worthington v. Covington, 82 Ky., 265; Pepper v. Philadelphia, 114 Pa. St., 96; *In re* Manhattan Ry., 102 N. Y., 302; *In re* Manger, 23 Hun., 658; *In re* Paine, 26 Hun., 431.

The lot owners were entitled to the benefit of this bond and the subsequent contract was void as to the property owners for this reason.  Mazet v. Pittsburg, 137 Pa. St., 548; Bond v. Mayor, &c., of Newark, 19 N. J. E., 376; Dickinson v. Bagby, 75 N. Y., 65; Tiedeman on Municipal Corporations, 171-172.

The very object of the bond was to protect the lot owners. Mitchell v. Milwaukee, 18 Wisc., 921; Newton vx. Devlin, 124 Mass., 490; Tiedeman on Municipal Corporations, Secs. 171-2; *In re* Leeds, 53 N. Y., 400.

And these warrants are unenforceable.  Addis v. Pittsburg, 85 Pa. St., 379; People v. Gleason, 25 N. E. R., 4; Re Leeds, 53 N. Y., 400; Newton v. Devlin, 124 Mass., 490; 1 Dillon Municipal Corps., 446; Fishback v. Chicago, 39 L. R. A., 483.

The pleadings of the plaintiffs are defective in failing to allege, and their case, in failing to prove the existence of a grade for the entire street and in failing to allege and prove

an apportionment by the general council.   They fail to sustain the burden of proof in showing that there is a proper journal of the board of public works or a recommendation of the ordinance passed or a proper advertisement or the passage of an ordinance.   In fact, they fail to allege properly any of the necessary steps.   The material allegations of the petition are denied.   The certified copies are insufficient to overcome this.   Louisville v. Kuntz, 20 Ky. Law Rep., Johnson v. Ferrill, 8 Ky. Law Rep.

The cost of the street is unreasonable and excessive.   The cost of the excavation and the difference between Gleason's and McNaughton's bids must come off the charge.

The Board of Public Works is an executive or ministerial body.   It is not legislative, and, hence, is not the "proper authority" to whom to delegate the purely legislative power of taxation.

Constitution of Kentucky, sections 27, 28 and 181.   1894 Statutes of Kentucky, sections 2802, 2826-7-8-9, 2839, 2743, 2748. Taylor v. Chandler, 9 Heiskell, 349; Taylor v. Bird, 63 Texas, 542; O'Brien v. Wheelock, 95 Fed., 883; Rathbone v. Wirth, 34 L. R. A., 409; S. C., 150 N. Y., 459; Warner v. People, 2 Denio, 222; People v. McKinney, 52 N. Y., 374; United States v. Ballin, 144 U. S., 1; People v. Angel, 109 N. Y., 564; Clapp v. Ely, 27 N. J. L., 662; State v. Denny, 4 L. R. A., (Indiana) 65; Evansville v. Blend, 4 L. R. A. (Ind.), 93; Hydes v. Joyes, 4 Bush, 464; Louisville v. Murphy, 86 Ky., 53; Johnson v. Ferrell, 8 Ky. Law Rep., Mercer Co. v. Ky. River Co., 8 Bush; 25 Am. & Eng. Ency. of Law, 516, 96, 97; 2 Dillon Munic. Corporations, sections 763, 769, 740, 741, 779; Cooley on Taxation, pp. 32, 48, 175, 642; White v. People, 94 Ills., 604; Dixon v. Racine, 61 Wisc., 545; Emory v. San Francisco, 28 Cal., 345; 56 Md., 1; 34 N. J. L., 237; People v. Brooklyn, 4. N. Y., 419; 41 N. Y., 125; 90 Ill., 49; 56 Wisc., 545; Board of Commrs., v. Wyandotte, 34 Pac. Rep., (Kas.) 416; Hovey v. Commrs., 44 Pac. Rep., 17 Parks v. Board, 61 Fed. Rep., 436; McCabe v. Carpenter, 36 Pac. Rep., 836; Cooley on Taxation, 642; Society v. Austin, 47 Cal., 646; People v. Parks, 58 Cal., 624; Westport ex rel. v. Mastin, 62 Mo. App., 656; Houghton v. Austin, 47 Cal., 646; Teegarden v. Racine, 56 Wisc., 549; 2 Dillon Munic. Corps., 746; People v. McCalg, 51 Ill., 17; Harward v. St. Clair, 51 Ill., 130; Pennington v. Woolfolk, 79 Ky., 13; Scofield v. Lansing, 17 Mich., 437; Mayor of Baltimore v. Scharf, 54 Md., 499; Dorris v. Reed, 65 N. Y., 566; Hinze v. People, 92 Ill., 496; Updike v. Wright, 81 Ill., 49; People v. Morgan, 90 Ills., 658; Norwalk Co's. Appeal, 39 L. R. A., 794; S. C.

Barfield, &c., v. Gleason, &c.  Kimberger, &c., v. Bitzer, &c.

69 Conn., 576; Cornell v. People, 107 Ills., 372; People v. De-
troit, 28 Mich., 227; Harson v. Vernon, 27 Iowa, 73; State of
Indiana v. Denny, 4 L. R. A., 65; Evansville v. Blend, 4 L.
R. A., 95; State of Indiana v. Denny, 4 L. R. R., 79; Common-
wealth v. Addams, 95 Ky., 588; Clark v. Rogers, 81 Ky., 45; Za-
ble v. Baptist Orphans' Home, 13 Ky. Law Rep., 385; Bradshaw
v. Lankford, 11 L. R., 582; McCrowel v. Bristol, 20 L. R. A.,
653; State v. Hudson Co., 39 N. J. L., 12.

The apportionment of a special assessment is legislative.
The executive department can exercise no legislative powers.
Taylor v. Commonwealth, 3 J. J. M., 401; Bruce v. Fox,
1 Dana, 449; Day v. Justices, 3 B. M., 198; Justices v. Har-
court, 4 B. M., 501; Gorham v. Luckett, 6 B. M., 159; Apple-
gate v. Applegate, 4 Met., 256; Potts v. Breen, 39 L. R. A., 152;
(S. C.) 167 Ills., 67; Iowa v. Des Moines, 39 L. R. A.,
(Iowa) 285.

No power is given to make a contract for street improve-
ments and neither the executive nor the legislative depart-
ment can exercise any powers not validly delegated.  Ken-
tucky Statutes, 2822; Becker v. Henderson, 18 Ky. Law
Rep., 881; Sedgwick on Statutory and Constitutional Construc-
tion, 466; Kneiper v. City, 7 Bush, 599; Kilgus v. Trustees,
94 Ky., 441; Worthington v. Covingtou, 82 Ky., 265; Broad-
way v. McAtee, 8 Bush, 508; Cooley on Taxation, 32; Murphy
v. Louisville, 9 Bush, 189.

Apportionment is an exclusively legislative power which can
not be exercised by a mere board. Scovell v. Cleveland, 1 Ohio,
126; People v. Mayor, 4 N. Y., 419; State v. Hudson, 39 N. J.
L., page 12.

The General Council must approve of every apportionment.
This is a condition precedent to a right to recover.
Barker's Ordinances, 1897, page 10, ordinance of June 26th,
1894; Stone's Ordinances, 1897, page 22, ordinance of June
26th, 1894; Stone's Ordinances of 1899, page 25, ordinances of
June 26th, 1894. 1894 Kentucky Statutes, 2783, 2834, 2839;
Constitution, section 181; Caldwell v. Rupert, 10 Bush, 182;
Cooley on Taxation, 175; Bouvier's Law Dictionary, "Assess;"
Barker v. Southern Construction Co., 20 Ky. Law Rep., 786;
Johnson v. Ferrill, 8 Ky. Law Rep., 216.

Section 2833 of the Kentucky Statutes authorizes the gen-
eral council to make all corrections to do justice. The assess-
ment in this case was made entirely by the board of works,
and the general council was given no opportunity to do any-
thing of the sort.

Special assessments must be based on benefits. If levied without regard to benefits, the assessment will be unenforceable, as the statute on which it is based is unconstitutional and void as a taking of private property for public use without compensation and without due process of law, and the contractor seeking to enforce a lien, or the municipality or county levying the tax, must show affirmatively the benefits conferred.

## CASES CITED BY OPPOSING COUNSEL CONSTRUED.

Sears v. Boston, 53 N. E.; Allen v. Davenport, 107 Iowa, page 90; Hillard v. Asheville, 24 S. E., 738; Raleigh v. Pearce, 110 North Carolina, 32; Gleason v. Waukesha, 79 N. W., 249; Roberts v. First National Bank, 79 N. W.; Rolf v. City of Fargo, 7 North Dakota, 640; Schroeder v. Overman, 55 N. E., 158; Allen v. Portland, 58 Pac., 509; Welsh v. Barren, 55 N. E., 164; Birdseye v. Clyde, 55 N. E., 169; Parsons v. District of Columbia, 170 U. S., 4; Wright v. Cushing; English v. Wilmington, 2 Marvell, Whitman v. Reading, 169 Pa.; Springfield v. Gay, 12 Allen, Garven v. Dossman.

## CASES SUPPORTING OUR CONTENTION.

Schroeder v. Overman, 55 N. E., 158; Sears v. Boston, 53 N. E.; Weed v. Boston, 51 N. E., 204; Kersten v. Milwaukee, 81 N. W., 948; Thomas v. Gaines, 35 Mich., 155; Detroit v. Judge, 112 Mich., 588; Welsh v. Barren, 55 N.., 164; Birdseye v. Clyde, 55 N. E., 169; State v. Bayonne, 47 Atlantic, 773; Sligh v. Grand Rapids, 47 N. W., 1093; Tidewater v. Costell, 18 N. J. Eq., 527; In the matter of Canal St., 11 Wend., 154; 3 Wend., 452; 23 Conn., 204; Nickey v. Stearns, 58 Pac., 459; Rammish v. Hartwell, 58 Pac., 920; Anderson v. Hill, 20 N. W., 549; Dietz v. City of Neenah, 64 N. W., 299; Ottawa v. Spencer, 40 Ills., 211; Larned v. Chicago, 30 Ills., 203; O. & C. Railroad v. Portland, 25 Ore., 229; Philadelphia v. Scott, 81 Pa., 85; Craig v. Philadelphia, 89 Pa., 265; State v. Mayor, 1 Dutcher (25 N. J. L.) 309; Timms v. Mayor, Ib., 399; People v. Hennion, 64 Hun., Boorman v. Santa Barbara, 65 Calif., 314; Savannah &c., Ry. v. Mayor of Savannah, 96 Ga., 680; Hutchinson v. Storri, 51 S. W., 848; Smith v. Buffalo, 54 N. E., 62; Boston v. Boston, & Albany R. R., Mass., page 95; Dyer v. Farmington, 75 Me., 515; Stewart v. Palmer, 74 N. Y., 183; State v. Chamberlain, 37 N. J., L., 388; Hamett v. Philadelphia, 65 Pa. St., 146; Kersten v. Manson, 27 Calif., 613; Macon v. Pattie, 57 Miss., 378; McCormick v. Patchin, 53 Mo., 36;; State v. Hoboken, 36 N. J. L., 293; State v.

Mayor, 37 N. J. L., 416; Boggert v. Elizabeth, 27 N. J. Eq., 568; Parsons v. Dyer, 56 Vermont, 469; McBean v. Chandler, 9 Heiskell, 349; Peay v. Little Rock, 32 Ark., 31; Lee v. Ruggles, 62 Ills., 427; Excelsior Planting Co., v. Green, 39 La. Ann., 455; Re Drainage, &c., 35 N. J. L., 497; Illinois Central v. Bloomington, 76 Ills., 447; Crawford v. People, 82 Ills. 557; Gilmore v. Hentig, 33 Kas., 174; Allegheny, v. W. P. R. R., 133 Pa., 375; Re Washington Ave., 69 Pa., 352; Bridgeport v. Railroad, 36 Conn., 255; Seattle v. Yessler, 1 Wash. Territory, 278; Goodrich v. Detroit, 82 N. W., 253 and 255; St. Louis v. Brown, 56 S. W., 298; Lexington v. McQuillan's Heirs, 9 Dana, 513; Norwood v. Baker, 172 U. S., 269; Dewey v. Des Moines, 173 U. S.; New Orleans v. Warner, 175 U. S., 120; Fay v. Springfield, 94 Fed., 409; Lyon v. Tonawanda, 98 Fed., 361; Cowley v. Spokane, 99 Fed., 841; Charles v. Marion, 98 Fed., 166; 100 Fed., 538; Loab v. Trustees, 91 Fed., page 37; Louisville v. Louisville Rolling Mills, 3 Bush, 416; Ludlow v. Trustees, 78 Ky., 357; Sutton v. Louisville, 5 Dana, 28.

This principle was not applicable to the State courts until after the fourteenth amendment in 1868. Brown v. N. J., 175 U. S., 172.

The supreme court of the United States is bound by the construction given by the State courts. Mo. Pac. v. Nebraska, 164 U. S., 403.

Due process of law involves a hearing on the question of benefits before some tribunal competent to base the improvements on the benefits. Norwood v. Baker, 172 U. S., 269; Dewey v. Des Moines, 173 U. S.; New Orleans v. Warner, 175 U. S., 120; Fay v. Springfield, 94 Fed., 409; Lyon v. Tonawanda, 98 Fed., 361; Cowley v. Spokane, 99 Fed., 841; Charles v. Marion, 98 Fed., 538; Loab v. Trustees, 91 Fed., page 37.   Also Kelly v. Pittsburg, 174 U. S., 78; Hager v. Reclamation District, 111 U. S., 71; Davidson v. New Orleans, 96 U. S, 616; Fallbrook District v. Bradley, 164 U. S., 112; Baumann v. Ross, 167 U. S., 548; Walston v. Nevin, 128 U. S.; Wurts v. Hoagland, 114 U. S., 608; Spencer v. Merchant, 125 U. S. 345; Chicago, &c. Railroad v. Minnesota, 134 U. S., 970; Lake Shore, &c., v. Smith, 173 U. S., 684; Lent v. Tillson, 140 U. S., 316; Paulson v. Portland, 149 U. S., 29.

There is no conflict between Norwood v. Baker and the earlier cases, but if there is, Norwood v. Baker overrules them and is itself the law.   The same doctrine as to hearing and notice was followed in Kentucky in the earlier cases, on which the decision in Walston v. Nevin was based.   Sutton v. Louis-

**500** · **KENTUCKY REPORTS.** [Vol. 111

Barfield, &c., v. Gleason, &c. Kimberger, &c., v. Bitzer, &c.

ville, 5 Dana, 28; Jacob v. Louisville, 9 Dana, 114; Louisville v. Louisville Rolling Mills, 3 Bush; Covington v. Dressman, 6 Bush, 210; Bradley v. McAtee, 7 Bush, 667; Howell v. Bristol, 8 Bush; Preston v. Rudd, 84 Ky., Nevin v. Roach, 86 Ky.

Under section 2833, the courts in which actions may be pending have no power to validate a void assessment or to base an assessment on benefits, where the assessment as made was not so based, nor to do anything except correct municipal errors. Caldwell v. Rupert, 10 Bush, 179; Preston v. Roberts, 12 Bush, 570; Loeser v. Redd, 14 Bush, 18.

Under the Kentucky system as construed and enforced by the courts, a charge made by the council is enforceable not only where not based upon benefits, but even if there are no benefits, and even if there is an injury, which is entirely contrary to the doctrine of Norwood v. Baker. The present Kentucky system excludes all consideration of benefits. Pearson v. Zable, 78 Ky., Covington v. Pence, 11 Ky. Law Rep., 52; Covington v. Worthington, 88 Ky., 206; Marshall v. Barbour Asphalt Co., 21 Ky. Law Rep., 712; Bullitt v. Selvage, 20 Ky. Law Rep., 599; holding that an assessment equal to the value of the land itself will be enforced. The system is clearly unconstitutional.

H. M. LANE, FOR APPELLEES.

### POINTS AND AUTHORITIES.

1. The apportionment of the cost of the improvement by original construction of the carriage-ways of public-ways in cities of the first class as provided for in the act, approved July 1, 1893, for their government, is purely ministerial and there is no discretion in the courts or councils as to the persons to be charged, the property to be taxed or as to the rule of apportionment. Broadway v. McAtee, 8 Bush, 516; Loesser v. Redd, 14 Bush, 20-21; Gleason v. Barnett, 20 Ky. Law Rep., 1696; Pennington v. Woolfolk, 79 Ky., 16; sec. 70, Act proved July 1, 1893, for the government of cities of the first class.

2. Under the system provided for in the act approved July 1, 1893, for the government of cities of the first class the property owners has the right by application to the chancellor to have the question determined as to whether or not the special benefits accruing to the adjacent lots from the improvement when completed will justify the imposition upon them of the cost of their construction, but this application must be made before, not after the construction of the improvement, otherwise the

Vol. 111]                APRIL TERM, 1901.                **501**

Barfield, &c., v. Gleason, &c.   Kimberger, &c., v. Bitzer, &c.

elements of estoppel come into play.  Louisville v. Louisville, 3 Bush, 416; Preston v. Roberts, 12 Bush, 590; Caperton v. Humpich, 95 Ky., 109-110.

3. The legislative authorities subject to the second proposition are the exclusive and conclusive judges as to whether or not the public needs require the improvement of a public way, whether the special benefits accruing therefrom to the adjacent lots will justify the imposition of the cost thereon and of the character and amount of material and work to be used in the construction.  Pearson v. Zable, 78 Ky., 172-173; Ludlow v. Covington, 78 Ky., 360; Preston v. Rudd, 84 Ky., 155, 12 Ky. Law Rep., 813; 20 Ky. Law Rep., 599.

4. The action of the legislative department within the limits of its jurisdiction, is not subject to judicial revision, nor can the purpose or intentions of its members be the subject of investigation by the judiciary.  Taylor v. Beckham, April, 1900.

5. The provisions of the Federal Constitution are not available to litigants in a State court unless they are set up and relied on in the pleadings.  Dewey v. Des Moines, 173 U. S., 193; Oxley v. Butler, 166 U. S., 648; Levy v. San Francisco, 167 U. S., 175; Kepley v. Illinois, 170 U. S., 182.

6. Copies of public records duly authenticated and used on the trial of the court below and treated as a part of the record, must be considered on appeal as a part of the record, although the clerks failed to endorse them as filed.   Burns v. Ingersoll, 6 Ky. Law Rep., 737; Bailey v. Fanning, 12 Ky. Law Rep., 644; Long v. Kerrigan, 15 Ky. Law Rep., 65; secs. 2775 and 2838, Ky. Stats.

7. There is no division of time in the computation of a day and attested copies of public records filed in the clerk's office to be read as evidence in an equitable action on the day of the trial are upon their face parts of the record.   Revill v. Claxton, 12 Bush, 563; Mallory v. Hiles, 4 Met., 54; Fehler v. Gosnell, 99 Ky., 386; 5 Hum. (Tenn.), 610; 20 Vt., 653; 38 Mo., 100; 12 Wheat., 511.

8. Proposition of law and fact of appellant discussed.

H. L. STONE, ATTORNEY FOR CITY OF LOUISVILLE.

We contend:

1. *That the appellee, city of Louisville, is not liable to appellants in damages for the annullment of the contract with McNaghton.*

It is a well-settled proposition that a municipal corporation is not impliedly liable to an action for damages either for the non-exercise of, or for the manner in which, in good faith, it ex-

502 KENTUCKY REPORTS. [Vol. 111

Barfield, &c., v. Gleason, &c. Kimberger, &c., v. Bitzer, &c.

ercises discretionary powers of a public or legislative character. Dillon on Mun. Corp., sec. 949.

A moral obligation vested upon the city, under the facts presented by the petition of McNaghton, to release him from the burden placed upon him which had broken him up financially, and left him without a home, or the means to prosecute his work.

In the absence of a charge of fraud or bad faith on the part of the general council and mayor, representing the city of Louisville in this transaction, there is certainly no cause of action stated in the cross petition against the city of Louisville.

2. *The cost of excavation by Gleason, the last contractor, formed a legitimate part of the entire cost of the improvement.*

It is equally well settled that a municipal corporation may change the grade of its public way or street and raise or lower the same, according to the judgment of its engineer or board of public works. Dillon on Mun. Corp., secs. 686 and 990. The statute clothes the board of public works with this power and authority. Kentucky Statutes, sec. 2829.

3. *This court has no jurisdiction of this appeal.*

The claims of the appellants in their cross action against the appellee, city of Louisville, can not be united for the purpose of giving this court jurisdiction. Osward v. Morris, 92 Ky., 48.

4. *Damages for injury to property under sec. 242 of the State Constitution.*

The cross action of appellants against the city of Louisville is not grounded upon section 242 of the Constitution.

5. *The board of public works has the power under the statute to make apportionment and issue apportionment warrants.*

It is claimed by appellants' counsel that all apportionment warrants issued by the board of public works, without approval of the mayor, are invalid. It seems that the statute is plain enough on that subject. The territory which shall bear the cost of the improvement of a public way when defined into public squares or streets is fixed by the statute itself. Section 2833, Kentucky Statutes.

6. *The improvement of Catalpa street was original construction.*

While it is alleged in appellants' answer that a grade was established by the town of Parkland for Catalpa street, and that it was graded and improved prior to the annexation of the town of Parkland to the city of Louisville at the cost of abutting lot owners, there is no proof in the record that any such cost was ever apportioned against the abutting property or paid by the owners prior to said annexation.

7. *Alleged unconstitutionality of the local assessment law.*

  No federal question was set up in any of the pleadings in the court below, and it is too late to make such a question for the first time on an appeal to this court. The case of Norwood v. Baker, 172 U. S., 278, does not apply to a case involving the validity of a local assessment under the statute for the government of cities of the first class.

  For the reasons urged and the authorities cited, I respectfully ask that the judgment of the court below dismissing the appellee's cross petition be affirmed.

OPINION OF THE COURT BY JUDGE DuRELLE—REVERSING.

The action first named was brought by the contractor against a number of persons owning property on Catalpa street, to subject the property to the payment of an assessment made for the original improvement of Catalpa street between Woodland avenue and Gibson lane. The petition was in the usual form in such cases, and sufficiently alleged in detail the various steps necessary to create a lien for the cost of the construction. A copy of the ordinance authorizing the improvement, the contract therefor, and the apportionment, properly attested by the comptroller, were filed, as required by Kentucky Statutes, section 2838, to establish *prima facie* evidence of the facts necessary to entitle the contractor to the relief he sought. An answer was filed by appellants, by the first paragraph of which practically all of the affirmative averments of the petition were denied, and the remaining seven paragraphs of which present various affirmative defenses, which will be stated as we consider them in this opinion. The material averments of this answer were denied by the reply. An amended answer was subsequently filed by appellants, by which they undertook to set up the defense that the city had no power to authorize the construction of the street at the cost of the abutting property holders; that the assessment for that cost was un-

constitutional, because not uniform, and not assessed upon
an *ad valorem* basis; and, further, that the assessment was
a taking of property without due process of law.    The
contractor filed an amended petition, praying judgment
against the city of Louisville for any part of the appor-
tionment warrants for which it might be determined that
no lien existed in his favor.    A number—but possibly
not all—of the appellants filed an amended answer, which
they made a cross petition against the city, amplifying the
averments of certain of the paragraphs of their original
answer, and alleging that the city had contracted with one
McNaghton for the construction of the same improvement
at a much lower rate than that at which the contract
was subsequently awarded to Gleason; that, without rea-
son or right to do so, McNaghton was released from his
contract, together with his solvent surety, and thereby the
cost of the work to the appellants was increased at least
twenty-five per cent.; that by reason of the ordinance pro-
viding for the improvement, and the work done in pur-
suance of it, a large amount of excavation, which was to-
tally unnecessary, and not a public improvement, was done,
and the cost thereof charged against appellants in the sum
of over $1,000, and that, if there is any liability for the ex-
cavation, it should be charged against the city; and they
prayed judgment against the city for the amounts charged
against them respectively.    To this cross petition a de-
murrer by the city was sustained.    Several hundred pages
of testimony were taken upon the issues of fact, and al-
most an equal quantity of briefs filed upon the facts and
the legal propositions presented.    The trial court decided
the questions of fact adversely to appellants, and, as the
contract contained the provision for repairs of the improve-
ment for five years, which was condemned by this court

in Fehler v. Gosnell, 99 Ky., 394 (18 R., 238), 35 S. W., 1125, judgment was rendered enforcing the lien for ninety per cent. of the amount of the assessment.

The case of Kimberger v. Bitzer—the second case named in the caption—presents almost exactly the same state of pleadings and facts.　The cases were heard together in the trial court and in this court, and will be considered together in this opinion.

The questions presented are so numerous, the arguments thereon so voluminous, and the time remaining to us so short, that in these cases, as in the case of Richardson v. Mehler, 111 Ky., 408, 23 R., 917 (63 S. W., 957), we shall not attempt more than a brief statement of the facts, the questions, and our conclusions, making no reference to the questions disposed of in the Richardson case.

### Questions of Fact.

It is not necessary to state or consider all of the questions of fact raised in this record. A sufficient statement will be made to show the general nature of the questions and the conclusions we have reached.　Catalpa street was originally a public way of the town of Parkland, a suburb of the city of Louisville.　It was claimed originally by the appellants that it had for a long time been a public way, dedicated to public use, and had been graded and improved.　This claim was altered substantially by a denial of the dedication and a denial of the annexation of Parkland.　The testimony offered clearly shows that long prior to the annexation it was in general use by the public as a public way; that it had been worked about as much as an ordinary dirt road is usually worked in the county outside of the city.　Joyes v. Shadburn, 10 Ky. Law Rep., 493.　Owing to the sandy nature of the soil, it

was, in wet weather, rather better than most of the country roads under like conditions. Its surface, except where affected by the travel over it and by the working referred to, practically conformed to the natural surface of the soil. It appears reasonably certain that it answered the purposes of the neighborhood, and that the property holders strenuously objected to its improvement as a city street on account of the expense. It is reasonably certain also that no such work was done upon this street as could, in any just sense, be considered the construction of a street. The mere grading of a dirt road so as to form a crown, and to leave depressions at the sides for surface drainage, and the leveling of inequalities, does not constitute a street construction. Ormsby v. Jamison, 9 Ky. Law Rep., 325; McHenry v. Selvage (99 Ky., 232) (18 R., 473) (35 S. W., 645); Mackin v. Wilson (20 R., 218), (45 S. W., 663). It is reasonably certain also that while, for the purposes of the city of Louisville, there existed a necessity that this street, or some other of the adjacent streets, should be improved so as to make an inlet to the business portion of the city for city limits, yet some other street—such as Twenty-sixth street—might just as well have been selected for the purpose. The weight of the testimony is decidedly in favor of the proposition that the selection of the elevation at which the street was to be built, and the fixing of that elevation by the counsel on the recommendation of the board of public works, was injudicious, for the reason that it required an unnecessary amount of excavation to bring the surface to the proposed level, and did not accomplish the result intended as to surface drainage of the adjacent territory. We can not but believe that the fixing of the level resulted in distinct injury to such of the abutting

property as was already situated at an acceptable height above the original level of the road.    The testimony tends to show that the McNaghton contract was to make the improvement with a better brick than that finally used, and at a very advantageous price to the property holders. There are some suspicious circumstances shown with regard to the condemnation by the board of the brick which were used for the improvement of other streets for which McNaghton had obtained contracts in that neighborhood, and which condemnation is claimed to have resulted in his release, and also with regard to the charge of favoritism shown to the Bannon brick, which were used in the improvement as made; but there is no showing that the contractor who constructed the improvement had any connection whatever with this.    The Ohio brick called for by McNaghton's contract are shown quite conclusively to be, in general, better brick than the Bannon brick.    On the other hand, the evidence is quite conflicting as to the quality of the particular lots of Ohio brick which were condemned for use upon the other streets.    The relationship between Mr. Bannon, the manufacturer of the Bannon brick, and Mr. Nevin, of the board of public works, relied on as tending to establish fraud and favoritism in the rejection of the Ohio brick, and the acceptance of the Bannon brick, in the second contract, proves to consist in the fact that the first wives of Bannon and Nevin were sisters.    Both of these ladies, however, were dead some twenty years before the matters in dispute occurred.   The evidence tends to show also that, while McNaghton himself was probably insolvent at the time of his release, the National Surety Company, which was his surety upon his bond, was perfectly solvent, and that it was improvident upon the part of the board of public works to recommend,

**508**          KENTUCKY REPORTS.          [Vol. 111

Barfield, &c., v. Gleason, &c.   Kimberger, &c., v. Bitzer, &c.

and the council to adopt, a resolution releasing him there-
from; the only showing made in support of the release
being his request for release, his statement that he was in-
solvent, and the consent of the surety company that he be
released, provided the company was relieved from "relia-
bility" upon his contract.    At the second bidding under
the ordinance no contract was let.    At the third bidding
the contract was let to Gleason at substantially the same
bid he had made at the second bidding, and which was
about 33 per cent. higher than the McNaghton contract.
A number of apparently sufficient reasons can be suggest-
ed for the difference in the bids.    The general ordinance re-
ferred to in the ordinances for the improvement of
the streets required a contract to keep the streets
in repair for five years, and required also the putting up
of collateral security to secure such repairs.    The temper
of the property holders was such as to almost insure te-
dious and costly litigation over the cost of the improve-
ment, and the experience of McNaghton with his other
contracts in the vicinity might well have acted as a deter-
rent to bidders.    The street was undoubtedly a costly
one,—probably the most costly brick street ever construct-
ed in Louisville.    The increased cost seems probably to
be due more to the excavation than anything else, though
the long haul of materials, necessitated by the locality,
undoubtedly contributed somewhat to it.

### The Constitutionality of the Kentucky System of Appor-
### tionment.

Little time need be spent in considering the question
whether the square-foot system of apportionment adopted
in this State for cities of the first class, by section 2833,
Ky. St., is objectionable under the Kentucky Constitution.
The general doctrine is well stated by Dillon as follows:

"The courts are very generally agreed that the authority to require the property specially benefitted to bear the expense of local improvement is a branch of the taxing power, or included within it; and the many cases which have been decided fully establish the general proposition that a statute authorizing the municipal authorities to open or establish streets, or to make local improvements of the character above mentioned and to assess the expense upon the property which, in the opinion of the designated tribunal or officers, shall be specially benefited by such street or improvement, in proportion to the amount of such benefit, or upon the abutters in proportion to benefits or frontage or superficial contents, is, in the absence of some special constitutional provision, a valid exercise of the power of taxation.   Whether the expense of making such improvement shall be paid out of the general treasury, or be assessed upon the abutting property, or other property specially benefited, and, if in the latter mode, whether the assessment should be upon all property found to be benefited, or alone upon the abutters according to frontage, or according to area of their lots, is, according to the present weight of authority, considered to be a question of legislative expediency, unless there is some special restraining constitutional provision upon the subject.   Whatever limitation there is upon the legislative power of taxation (which includes the power of apportioning taxation) must be found in the nature of the power and in express constitutional provisions."   2 Dill. Mun. Corp., sec. 752.   See, also, Cooley, Tax'n, 459, 460; 2 Beach, Pub. Corp. sec. 1175; Elliott, Roads & S., sec. 396.   In Kentucky there is a long line of decisions to the same effect, beginning with the opinion of Judge Robertson in City of Lexington v. McQuillan's Heirs, 9 Dana, 513, 35 Am. Dec., 159; City of Lou-

**510** KENTUCKY REPORTS. [Vol. 111

Barfield, &c., v. Gleason, &c.   Kimberger, &c., v. Bitzer, &c.

isville v. Hyatt, 2 B. Mon., 177, 36 Am. Dec., 594; Id.,5 B.
Mon., 199,—in which the area mode of assessment has been
sustained.    In Baptist Church v. McAtee, 8 Bush, 510, 8
Am. Rep., 482, the doctrine, together with the constitution-
al limitation, is thus stated by Judge Lindsay:    "It is cer-
tainly well settled in this State that the cost of the origin-
al construction of streets of a  city may be imposed upon
the owners of real estate alone without violating the con-
stitutional limitations upon the legislative power of taxa-
tion.    .  .  .   In proportion as the trade and population
of a city increases, the value of real estate advances.    The
owners of such real estate receive and enjoy very nearly
the sole permanent advantages accruing to the city from
the construction, repair, and reconstruction of the streets
upon which that property may be situated.    The general
public certainly receive incidental benefits from such im-
provements, but the benefits to owners of real property
are directly appreciable and permanent.    The original im-
provement enhances the value of lots adjacent to the
streets improved by making it accessible to the public, and
attracting trade and population."    See, also, Preston v.
Roberts, 12 Bush, 570, Nevin v. Roach, 86 Ky., 492 (9 R.;
819), 5 S. W., 546, and Watson v. Nevin, 1d.    The same doc-
trine has been again and again affirmed in cases arising
under the new Constitution.    Gleason v. Barnett (106 Ky.,
125) (20 R., 1694) 50 S. W., 67; Gosnell v. City of Louisville
104 Ky., 201 (20 R., 519) 46 S. W., 722; McNaghton v. In-
dustrial School (19 R., 1695) 44 S. W., 380.    This ques-
tion is no longer an open one.

### Spoliation.

The act being constitutional, does this case present such
an arbitrary exercise of power thereunder as to work man-
ifest injustice, and come within the rule announced by
Judge Holt in Preston v. Rudd, 84 Ky., 156 (7 R.,  806), as be-

ing spoliation and not taxation? In that case the rule was thus announced: "Such assessments are made upon the assumption that a portion of the community are specially benefited by the improvement. The principle is that the territory is benefited; that it has common interest; and that, governed by equitable rules, it must equally bear the burden. Necessarily individual cases of hardship will arise; but it approaches equality as nearly as is practicable. It follows that a lot owner may be compelled to pay his proportion of the cost of an improvement, although in his particular case his property may not be benefited." This rule, however, can not be so extended as to entirely take from the citizen his property. This would work a "manifest injustice." It would be a spoliation and not taxation. Under the guise of benefit and taxation, he can not be thus arbitrarily deprived of his property. t would be but an appropriation of it, by the exercise of arbitrary power, to public use without compensation. The assessment there was held to be an arbitrary and unconstitutional taking of property. But in the case at bar the showing on behalf of the property holders falls very far short of presenting a case of spoliation. The weight of the evidence tends very strongly to the conclusion that the abutting property was benefited by the making of the street, but that some of it was injured by the change of grade, perhaps to a greater extent than it was benefited by the street. The damage resulting from the change of grade will be considered later. Leaving that damage out of consideration, there can be but little doubt from the testimony that the street as constructed was a benefit to adjacent property. The testimony of the witness Pearson, formerly city engineer,

seems to us conclusive upon that point.    Whether the benefit was as great as the cost is another question.

While this system of taxation for local improvements proceeds upon the theory of equivalents, exact compensation has never been deemed attainable; or even hoped for, under any system of law yet devised.    The question whether the contiguous territory would be benefited, and the boundary within which benefit therefrom is to be presumed, has uniformly been construed to be a matter of legislative discretion; and, that discretion having been exercised with the presumption of law in favor of its correctness, the courts will not intervene to disturb the legislative determination, except upon a showing of fact so conclusive as amply to justify their interference. No such showing is made by this record.    The witnesses for appellants almost uniformly base their evidence that the improvement was harmful, rather than beneficial, upon the injury occasioned by the change of grade, and the increased cost occasioned by the reletting.    In Village of Norwood v. Baker, 172 U. S., 278; 19 Sup. Ct., 190; 43 L. Ed., 447, Mr. Justice Harlan, speaking for the court, thus stated the doctrine upon this question:  "Undoubtedly abutting owners may be subjected to special assessments to meet the expenses of opening public highways in front of their property; such assessments, according to well-established principles, resting upon the ground that special burdens may be imposed for special or peculiar benefits accruing from public improvements.    Mobile Co. v. Kimball, 102 U. S., 691, 703, 704; 26 L. Ed., 238; Illinois Cent. R. R. Co. v. City of Decatur, 147 U. S., 190, 202; 13 Sup. Ct., 293; 37 L. Ed., 132; Bauman v. Ross, 167 U. S., 548, 589; 17 Sup. Ct., 966; 42 L. Ed., 270, and authorities there cited.    And according to the weight of judicial au-

thority the Legislature has a large discretion in defining the territory to be deemed specially benefited by a public improvement, and which may be subjected to special assessment to meet the cost of such improvements. In Williams v. Eggleston, 170 U. S., 304, 311; 18 Sup. Ct., 617, 619; 42 L. Ed., 1047, 1050, where the only question, as this court stated, was as to the power of the Legislature to cast the burden of a public improvement upon certain towns, which had been judicially determined to be towns benefited by such improvement, it was said: 'Neither can it be doubted that, if the State Constitution does not prohibit, the Legislature, speaking generally, may create a new taxing district, determine what territory shall belong to such district, and what property shall be considered as benefited by a proposed improvement.'"

So, in Preston v. Roberts, 12 Bush, 570, in an opinion by Judge Cofer, it was said: "All municipal assessments are based on the ground that the property subject to assessment is benefited by the improvement for which the assessment is made, and neither the Legislature of the State nor the municipality can constitutionally subject property not actually or presumptively benefited by an improvement to assessment to pay the cost of such improvement. It is often difficult, and sometimes impossible, to determine the exact limit to which such benefits extend; but, from the very nature of the subject, there must be authority somewhere to consider that question; and there is, perhaps, no safer mode of dealing with a question environed by such difficulties than to confide the power to the local government, to be exercised subject to supervision by the courts, where the peculiar facts of each case can be examined and the controversy determined by those

rules and principles which have always governed courts in dealing with questions of assessments and taxation." And see Nevin v. Roach, 86 Ky., 493 (9 R., 819), 5 S. W., 546. In Kelly v. City of Pittsburg, 104 U. S., 78, 26 L. Ed., 659, Mr. Justice Miller said: "It may be true that he does not receive the same amount of benefit from some or any of these taxes as do citizens living in the heart of the city.    It probably is true, from the evidence found in the record, that his tax bears a very unjust relation to the benefits received as compared with its amount.    But who can adjust with precise accuracy the amount which each individual in an organized civil community shall contribute to sustain it, or can insure in this respect absolute equality of burden and fairness in their distribution among those who must bear them?"    In Wight v. Davidson, 181 U. S., 371, 21 Sup. Ct., 616, 45 L. Ed.—, an appeal from the District of Columbia, it was said April 29, 1901, by Mr. Justice Shiras: "Special facts showing an abuse or disregard of the law, resulting in an actual deprivation of property, may give grounds for applying for relief to a court of equity; and this was thought by a majority of this court to have been the case in Village of Norwood v. Baker." So, in Baptist Church v. McAtee, 8 Bush, 517, 518, 8 Am. Rep., 486, 487, Judge Lindsay, speaking for the court, said: "The power to impose this character of taxation must to some extent depend upon the fact that the persons taxed are correspondingly benefited by the expenditure thereof. The courts would hesitate to interfere in cases in which it may be a question of doubt as to whether the persons taxed receive commensurate benefits; but, where the taxation is so excessive as to render it doubtful whether the property to be benefited will suffice to pay the assessment against it, they can no longer be deemed taxation.    To

Vol. 111]       APRIL TERM, 1901.            515

Barfield, &c., v. Gleason, &c.   Kimberger, &c., v. Bitzer, &c.

enforce their collection would be the exercise of absolute and arbitrary power over the property of the citizen,—a power which, under our form of government, does not exist even in the largest majority.    Whenever such a case may arise, the courts will be prompt to afford protection."

The courts have gone very far in stating the effect of the presumption of the legislative determination of benefits resulting from such improvements, and have perhaps in some cases overstated it as conclusive.    Such statements, however, that the legislative determination of benefit is conclusive, are always to be understood as made subject to the constitutional limitation recognized in the provision of the old charter of the city of Louisville, which is re-enacted in section 2834, Ky. St., and announced in Baptist Church v. McAtee, supra; Preston v. Roberts, 12 Bush, 570; Preston v. Rudd, supra; Frantz v. Jacob, 88 Ky., 525, (11 R., 55) 11 S. W., 654; Gleason v. Barnett, supra; and Walston v. Nevin, 128 U. S., 578, 9 Sup. Ct., 192, 32, L. Ed. 544,—in which is stated the position of the court as to the constitutional limitation.    From that position we have never receded or been disposed to recede.    See, also, Petter v. Allen (21 R., 1122), (54 S. W., 174); City of Louisville v. Selvage (106 Ky., 730 (21 R., 349) (51 S. W., 447).

## Fourteenth Amendment.

Upon the authority of the opinion of Mr. Justice Harlan (Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct., 187, 43 L. Ed. 443), an immense volume of argument has been devoted to the proposition that the Kentucky statute is violative of the fourteenth amendment to the Constitution of the United States, in that there is no provision made by the statute for a preliminary hearing as to the extent of special benefits to each piece of property resulting from the improvement.    An extended consideration of

516 KENTUCKY REPORTS. [Vol. 111

Barfield, &c., v. Gleason, &c. Kimberger, &c., v. Bitzer, &c.

this argument has been rendered unnecessary by recent decisions of the supreme court of the United States in the cases of French v. Paving Co., 181 U. S., 324, 21 Sup. Ct., 625, 45 L. Ed.—; Wormley v. District of Columbia, 181 U. S., 402, 21 Sup. Ct., 609, 45 L. Ed.—; Allen v. Same, Id.; Wight v. Davidson, 181 U. S., 371, 21 Sup. Ct., 616, 45 L. Ed.—; Town of Tonawanda v. Lyon, 181 U. S., 389, 21 Sup. Ct., 609, 45 L. Ed.—,—all rendered on the 29th day of April last, and to appear in 181 U. S. The contention in each of these cases seems to be that there must be some provision for a preliminary hearing as to special benefits to meet the requirements of due process of law. In each of those cases it was decided that such provision was unnecessary, and the doctrine laid down in Walston v. Nevin, 128, U. S. 581, 9 Sup. Ct., 193, 32 L. Ed., 546, was expressly reaffirmed. In that case the old charter of the city of Louisville was under consideration, of which the present act for the government of cities of the first class is, as to the matter under consideration, a re-enactment. In the opinion by Chief Justice Fuller it was said: "The statute has been repeatedly before the Kentucky Court of Appeals, which has sustained it as constitutional and proper legislation; the power vested thereby in the local government being subjected to the supervision of the courts, 'where the peculiar facts in each case can be examined, and the controversy determined by those rules and principles which have always governed courts in dealing with questions of assessment and taxation.' Preston v. Roberts, 12 Bush, 570, 587; Beck v. Obst, 12 Bush, 268; Baptist Church v. McAtee, 8 Bush, 508, 516, 8 Am. Rep. 480. Unjust, unequal, or arbitrary burdens are not authorized to be imposed by the terms of the act, and opportunity is given to every party interested to be heard in opposition to the

enforcement of the liability in the courts, which are speci-
fically authorized to 'make all corrections, rules, and orders
to do justice to all parties concerned.'" The doctrine
was reaffirmed by the supreme court in French v. Paving
Co., citing Spencer v. Merchant, 125 U. S., 356, 8 Sup. Ct.
921, 31 L. Ed. 763; Hagar v. Reclamation Dist., 111 U. S.,
701, 4 Sup. Ct., 663, 28 L. Ed., 569; Davidson v. City of
New Orleans, 96 U. S., 97, 24 L. Ed., 616; Mattingly v.
District of Columbia, 97 U. S., 687, 24 L. Ed., 1098; Bau-
man v. Ross, 167 U. S., 548, 17 Sup. Ct., 966, 42 L. Ed., 270;
Parsons v. District of Columbia, 170 U. S. 45, 18 Sup. Ct.
521, 42 L. Ed., 943; Cooley, Tax'n. 447; 2 Dill. Mun. Corp.
sec. 752; and many other authorities. In the case of
Wight v. Davidson it was said: "That it was not intend-
ed by this decision (Village of Norwood v. Baker) to over-
rule Bauman v. Ross and Parsons v. District of Columbia
is seen in the opinion where both of these cases are cited
and declared not to be inconsistent with the conclusion
reached." And in Town of Tonawanda v. Lyon it was
said in the opinion by Mr. Justice Shiras: "It was not
the intention of the court in that case to hold that the
general and special taxing systems of the States, however
long existing and sustained as valid by their courts, have
been subverted by the fourteenth amendment of the Con-
stitution of the United States. The purpose of that
amendment is to extend to the citizens and residents of
the States the same protection against arbitrary State
legislation affecting life, liberty, and property as is afford-
ed by the fifth amendment against similar legislation by
Congress. The case of Village of Norwood v. Baker pre-
sented, as the judge in the court in the present case well
said, "considerations of. peculiar and extraordinary hard-
ships, amounting, in the opinion of a majority of the judges

of this court, to actual confiscation of private property to public use, and bringing the case fairly within the reach of the fourteenth amendment."

Constitutional Provision for Compensation for Injury.

Section 242 of the Constitution provides: "Municipal and other corporations, and individuals invested with the privilege of taking private property for public uses, shall make just compensation for property taken, injured or destroyed by them; which compensation shall be paid before such taking, or paid or secured, at the election of such corporation or individual, before such injury or destruction." This section is relied on as a defense to the assessment, or, if that can not be done, as authorizing a recovery over against the city for the amount of the cost of the excavation made necessary by the change of grade of the street. It may be assumed that by a case of City of Henderson v. McClain, 102 Ky., 402, (19 R. 1450) 43 S. W., 700, 39 L. R. A., 349), it has been settled that a change of grade causing damages to abutting property is such an injury as is provided for by this section.

It is contended that no lien was created by the making of Catalpa street, that the whole proceeding was void, and that the city and the contractors were mere trespassers while doing the entire work. It may be conceded that, if the injunction had been applied for in proper time, the injury to the abutting lots might have been prevented until compensation had been made or secured for such injury. The fact that several of the appellants obtained damages against the city on account of the change of grade, several of which judgments have been affirmed by this court, would seem to show that there is no reasonable doubt of the fact of the injury. The question, however, is whether

the remedy here sought is available.    The fixing of the
present grade was accomplished before the ordinance was
adopted providing for this improvement.    The injury
caused by the change of grade and the consequent excava-
tion was undoubtedly recoverable against the city, but
that is not the relief which is sought in this case.
What is here sought is: First, that the ordinance provid-
ing for the work be declared absolutely void, because it
was done upon the grade theretofore fixed by the council,
and it is therefore claimed that there can be no recovery
by the contractor, who performed the work in spite of the
vehement protest of the property holders; and, second, that
the cost of the excavation be apportioned among the prop-
erty holders, and that each of them recover the amount
apportioned to him against the city.    We do not think
that either of these contentions can be sustained.    It
may well be that the change of grade by the council might
have been prevented by the injunctive process of a court of
equity, or that the physical change by the excavation to
conform to the grade fixed might in like manner have been
prevented until compensation for the injury occasioned
thereby had been provided.    But we do not think it can
properly be held that an ordinance providing for a public
improvement is absolutely void, so as to leave the con-
tractor who does the work without remedy, because the
law under which the ordinance is enacted requires the
work to be done in conformity with the grade theretofore
established and the performance of the work in the man-
ner required produces injury, compensation for which is
not provided in the ordinance.    Nor do we think appel-
lants are entitled to recover of the city the cost of the
excavation assessed against their property, and occasioned
by the change of grade, as they have waited, not without

earnest protest, however, until the work had been done; and it is obvious that the cost of excavation according to the contract is not the measure of their damages. The damages which they have suffered have accrued, are easily ascertainable, and the proper proceeding for their recovery now is an action at law for damages.

The authorities cited do not seem to us to sustain the proposition argued by counsel for appellants, viz. that a statute, whether of the State or municipality, which results in injury to property, is unconstitutional unless the statute itself provides for compensation to be made for the injury before it is done. The case of the City of Covington v. Worthington, 88 Ky., 206 (11 R., 141), 10 S. W., 790, 11 S. W., 1038, is cited as holding that such a statute failing to provide compensation is void. On the contrary, in that case the statute under consideration was held constitutional. The proposition there stated, that possession can not be taken of condemned property until compensation is made, is elementary. So, too, a statute which provided for taking property for public use without compensation would undoubtedly be unconstitutional. There is no trouble about that proposition. So, too, it might be that a statute which provided for injury of private property for public use, or which provided for the doing of anything from which injury necessarily would result, would be held unconstitutional if it did not provide compensation for the injury. But the vast majority of statutes providing means whereby local improvements shall be made, whether, as in this case, they are general provisions contained in the charters of municipalities, or provide directly for the specific improvement, the courts can not say that the statute will work injury in all or any of its applications; nor can such statement be predicated of an ordinance which

merely determines that an improvement shall be made.  In such cases the injury, prospective or existing, must be affirmatively shown by the party aggrieved.    In this connection, see Hickman v. City of Kansas, 120 Mo., 110, 25 S. W., 225, 23 L. R. A., 658.

### Constitutionality of Section 2839, Ky. St.

"The board of public works shall make out all apportionment warrants for which liens are given for improvements of public ways. . . ."   It is urged that this is a legislative function, amounts to the imposition of a tax, and can not be performed by a body which in the act creating it is designated as an "executive board."   The authorities cited by appellants upon this question do not seem to us to be at all applicable.   The action provided for in the section is making out apportionment warrants. In cases where, as in the cases at bar, the improvement is in a territory bounded by principal streets, the statute itself makes the apportionment in proportion to the number of square feet of land in each fourth of a square contiguous to the public way improved.   When the ordinance is duly passed, the contract executed, and the work done, the cost of the work is by the statute apportioned among the lots in the quarter squares contiguous to the improvement. The mere making out of the apportionment warrants is purely clerical and ministerial, and may be properly performed by the executive board.   If incorrectly performed, the errors therein may be corrected by the court.   See Gosnell v. City of Louisville (104 Ky., 201) (46 S. W., 722). It is provided that interest shall not go until the warrants are issued by the board.   This provision, we assume, is for the benefit of the property holder, that he may have notice of the exact amount to which his property is subject; and for this reason we held in Fehler v. Gosnell, supra, that, where

the apportionment by the board is incorrect, interest does not begin to run until a correct apportionment is made by the court. This action of the board is in no sense the levy of the tax for the local improvement. The tax is levied by the statute when the ordinance is adopted, providing "said work shall be done at the cost of the owners of the ground as provided by law." The law itself directs the proportion in which the levy is made. See Richardson v. Mehler, this day decided. In most of the authorities cited by counsel that apportionment considered is that defined by Cooley, Tax'n, p. 175, where it is said: "The apportionment of the tax consists in a selection of the subjects to be taxed, and in laying down the rule by which to measure the contribution which each of these subjects shall make to the tax. Apportionment is therefore a matter of legislation." It is evident that ordinary taxation is here referred to, and not special assessments for local improvements. The apportionment referred to in the quotation is that which we find in the revenue laws of the States where the various subjects of taxation are classified, and the rate of taxation upon each class fixed. Such definitions can have no application to a case like this, where all of this apportionment has been performed by the Legislature, and where property to be taxed belongs entirely to one class, viz., the square feet of land in the quarter squares contiguous to the improvement. Such apportionment as is here provided for is purely clerical, and is so recognized in the cases of Baptist Church v. McAtee, 8 Bush, 516, 8 Am. Rep., 480, and Loeser v. Redd, 14 Bush., 20.

## The Constitutionality of the Act for the Government of Cities of the First Class.

It is claimed, also, that all that portion of the act for the government of cities of the first class which provides

for the original construction of public ways at the cost
of abutting owners is unconstitutional, because there is no
requirement in the statute for an approval by the city coun-
cil of the contract for such construction; that in fact there
is no provision of law requiring any contract to be ap-
proved by the council, except the provision in section 2822,
Kentucky Statutes, which evidently refers to disbursements
by the city out of its own funds; that the only power to let
a street contract is contained in section 2829, and is by that
section vested in the board of public works; and that this
power is an essential part of the tax, and is that part of
the procedure looking towards the imposition of the tax
by which the tax rate is fixed. It is urged that the only
proceeding which is required to be taken by the council in
these matters is the enactment of the ordinance by which
it is simply determined that the improvement shall be
made; that the subsequent procedure, so far as the statute
is concerned, is intrusted solely to the board of public
works; that the board draws the specifications, adver-
tises the letting, opens the bids, awards the contract, ex-
ecutes the contract under the seal of the corporation, in-
spects and receives the work when finished, and apportions
the cost among the property holders. The passage of the
ordinance, says counsel, is but one step in the imposition
of the tax; it determines that the improvement shall be
made, and the law provides that it shall be done at the
cost of abutting property holders, but that until the bid-
ding is completed, and the rate thereby fixed, by fixing the
amount to be raised, the imposition of the tax is not com-
plete. And this is urged upon the ground that the fixing
of the amount to be raised by taxation is a legislative func-
tion, and can not be performed by a purely ministerial
body, such as the executive board. To this it may be re-

sponded that the question is not an open one in this State. In Baptist Church v. McAtee, supra, Judge Lindsay, speaking for the court, in response to a similar contention, said: "The general council is invested with legislative discretion in determining when and in what manner a particular street shall be improved, but in apportioning the cost of the improvement among those persons bound to pay the cost, as well as in accepting the contract under which it is to be made, its action is ministerial, and made subject to judicial revision 'when tainted with fraud, or when it is necessary for the correction of errors. The council procures the improvement to be made, and the legislative enactment to which the municipality owes its existence, unaided by any municipal ordinance, imposes upon the property owners the duty of paying their proper proportions of the expense thereby incurred." So, in Loeser v. Redd, 14 Bush, 20, in an opinion by Judge Pryor, it was said: "The city council orders the improvement, and the law provides the mode of assessment and the property to be assessed. In such cases, when a mistake has been made in the assessment, and a party owning property within the fourth of a square has paid too much, or been omitted from the assessment, or the council has gone beyond the fourth of a square in making the assessment, the courts have the right to correct the mistake or rectify the error, for the reason that the law, when the improvement is ordered, creates and fixes the liability. No discretion is left with the court or council as to the party to be charged, or as to the property to be taxed. The chancellor is only enforcing the law by requiring the property already selected as the subject for taxation in the particular case to pay it." So, in an opinion by Judge Paynter in Gleason v. Barnett (106 Ky., 125)

20 R., 1694, 50 S. W., 68, it is said: "It is within the power of the general council, by ordinance, to declare where the improvement shall be made, and how it shall be made, but the General Assembly has declared how the cost shall be apportioned when the territory is defined into squares by principal streets, and that it shall be done by the board of public works." These authorities seem to us to apply, also, to the contention last considered.

It may be remarked that the contract appears to have been approved by both boards of the council and signed by the mayor, but we attach no importance to this fact. If a compliance with the requirements of the statute, express and implied, does not create the lien, it can not be created by unauthorized action of the council.

### Warrants not Approved by the Council.

It appears that by general ordinance of the city approved June 26, 1894 (Ordinances of Louisville of November, 1895, p. 10), provision was made that the assessor should furnish the board a list of the names of owners of property, and a description of the ground owned by each, and that when said list and description should be furnished, and the work received as completed, and apportioned by the board of public works, and approved by the general council and the mayor, the city should furnish warrants for the cost of the improvements against the owners of ground, and that the lien for the cost of the improvement should exist from the date of the approval of the apportionment by the mayor. It is insisted that, as the warrants here sued on were not approved by the general council or the mayor, no valid apportionment was made, and no lien ever attached. This contention can not be sustained. It may be conceded that the city legislature had power to require

of its officials that they should do these things, but that the requirement does not in the slightest degree affect the question whether the contractor acquired a lien under the statute. If the statute is constitutional and was complied with, the rights which it provided should attach upon such compliance became fixed thereby.

### Annexation.

Upon the question of whether the portion of Parkland in which this improvement is situated was annexed to the city of Louisville, we think the record is conclusive, and can not be overcome by the recollection of a witness. Indeed, the witness' statement that the ordinance was passed by both boards on the same night may be perfectly consistent with the proper passage of the ordinance by one of the boards at a subsequent date, which in Oswald v. Gosnell (21 R., 1660) (56 S. W., 165), was held a sufficient compliance with section 2777, Kentucky Statutes.

### Five-Years Guaranty.

We can not concur in the contention for appellants that the five-years guaranty provided for in the general ordinance which was referred to and made a part of the ordinance for the construction or the improvements, and also embodied in the contracts, avails to defeat a recovery. The guaranty clause of the contract has been construed by this court in Fehler v. Gosnell and Gosnell v. City of Louisville, supra. The contractor must be presumed to have contracted with reference to the legal construction of this provision as determined by the court. The judgment of the trial court conforms to the rulings of this court in the cases mentioned, and relieves the taxpayers of ten per cent. of the cost of the improvement. And this, we are bound to presume, was a sufficient relief against

any excessive cost occasioned by the insertion of the pro-
vision.   Moreover, the evidence in the case tends strongly
to support the conclusion that it was in fact ample for that
purpose.

### The Grade.

We do not fully understand the contention of counsel as
to the fixing of the grade, in support of which he refers
us to Zable v. Orphans' Home, 92 Ky., 94, 13 R., 385, 17 S.
W., 212, 13 L. R. A., 668. In that case it was held that there
was no averment or evidence of the grade having been fixed.
But it was, in addition, held that proper averments of the
steps leading to the creation of a lien, supported by the
exhibits required by the then existing statute to make
out a *prima facie* case, entitled the plaintiff to a judg-
ment in the face of a mere denial.   The requirements stat-
ed in that opinion seem to have been met in this case.
McHenry v. Selvage, 99 Ky., 232, 18 R., 473, 35 S. W., 645.

### Was the Improvement Necessary?

Whether the improvement of Catalpa street was nec-
essary is, we think, a matter committed solely to the
determination of the council, subject to the limitations we
have indicated.   This doctrine seems to be abundantly
supported by the cases of Preston v. Roberts, 12 Bush,
590, and Caperton v. Humpich, 95 Ky., 109 (15 R., 430) 23
S. W., 875.

### Claim against City for Compensation for Release of First Contractor.

It appears that at the first letting this work was awarded
to one McNaghton, who entered into a contract with good
security; that after performing certain work in the same
neighborhood, under like contracts, he became insolvent
(it is claimed, by reason of the improper rejection of mater-
ials purchased by him to carry on the work), and made

application for release from his remaining contracts, and that, although his surety was ample and sufficient, the board of public works recommended his release, and the council adopted a resolution rescinding the contract. There was a subsequent advertisement of the improvement, and the appellee, Gleason, was the lowest bidder. His bid was from 25 to 33 per cent. higher than the McNaghton contract. No award was made at that time, but at a subsequent letting the contract was awarded to Gleason on substantially the same bid that he had made at the time of the second advertisement. A judgment over against the city is asked by the appellants for the difference between the McNaghton contract and the bid upon which the contract was awarded to Gleason. Does this state of facts constitute a cause of action against the city? Upon this question the members of the court are not in accord, but the majority are of opinion that it does so, for the following reasons: The city of Louisville, in determining that Catalpa street should be improved, performed a legislative function. In advertising for bids under the ordinance making the award, executing the contract with the bidder, and requiring the performance of the work, it was, through its officers, executing a statutory power of attorney from the property holders. The contract was made with concededly good and sufficient authority. The council, on the recommendation of the board of public works, undertook by resolution to release the contractor and his surety from its fulfillment. There was here no exercise or attempt to exercise legislative discretion a second time upon the question which had previously, in the exercise of legislative discretion, been determined, viz., whether the improvement was necessary and should be made. The extent of the council's

powers in that behalf, and the proper mode of their exercise, need not be considered here. Nor need we consider the powers of the council in a case where the contract is unenforceable either because of irregularity, or because of insolvency of the contractor and his surety. The contract here is conceded to have been valid and enforceable. It was one which the city council had no power by resolution to cancel, and subsequent events showed it was a highly advantageous contract. By the city's unauthorized action it cast upon the property holders the burden of the difference in cost between the work as provided for under the McNaghton contract and under the less advantageous Gleason contract. For this difference the property holders are entitled to a right of action, not against Gleason, who was required only to look to the validity of the ordinance which provided for the improvement, but against the city, by whose unauthorized action the burden was cast upon them.

But it is contended on behalf of the city that, if a right of action exists against it for the excess of cost of the Gleason contract over that of McNaghton, the proportion of that excess to which each of the appellants is entitled would not be as much as $200; that the right of recovery, if it exists, is to a personal judgment against the city in favor of each individual for his proportion of the excess, and not the aggregate to which all of the appellants would be entitled; and from this it is insisted that it follows that this court has no jurisdiction of the appeals against the city, under Oswald v. Morris, 92 Ky. 48, 13 R., 355, 17 S. W., 167. But the majority of the court are of the opinion that, as the right of recovery grows out of the ordinance and contract, whereby a lien has been im-

posed upon appellant's lands, and as the court has juris-
diction of the appeal from the judgment enforcing that lien,
which, under the statute, is enforceable in a single suit
against the lands of all, it should retain jurisdiction of the
appeals in so far as it may be necessary to do justice be-
tween the parties. This seems to be sustained by Rick-
ets v. Hamilton (16 R., 351-762) (29 S. W., 736). Moreover the
total claim against the city of each appellant seems prob-
ably to be sufficient to give jurisdiction.

From this it follows that the judgments in favor of
Gleason and Bitzer are affirmed, and the judgments in
favor of the city are reversed, with instructions to enter
judgments in conformity with this opinion.

Judge Guffy dissents.

---

CASE 50—MOTION OF ATTORNEY-GENERAL TO MODIFY RESPONSE TO
PETITION FOR REHEARING IN CASE OF COMMONWEALTH V. WELCH—
June 22.