CASE 65—PETITIONS EQUITY—November 3.

# Nevin, &c., v. Roach, &c.
# Watson, &c., v. Nevin, &c.

APPEALS FROM LOUISVILLE LAW AND EQUITY COURT.

1. STREET IMPROVEMENTS.—In order to make adjacent property liable for the cost of improving a street it is not necessary that the city or the contractor should show an immediate pecuniary benefit to the owner.

2. SAME.—The hearing which the tax-payer has when a lien upon his property for the cost of a street improvement is sought to be enforced is all that is necessary to constitute " due process of law." No other notice is necessary.

3. SAME.—A single entry by the clerk upon the records of the city council that ordinances for the improvement of several streets, naming them, were passed, does not show that all were voted upon at one time, but the presumption is that they were voted upon separately, as required by the charter.

4. SAME.—The second reading of an ordinance of the city of Louisville may be dispensed with at the same meeting of the council at which it has its first reading, although the charter provides that no ordinance shall be passed until it shall have been read in each board "at two several meetings, unless that provision be suspended by a vote of all the members elect."

5. SAME.—When the apportionment of the burden for a street improvement is reported by the engineer to the city council, and his report adopted, it then becomes the act of the council as much as if the council had made the estimate and directed· the apportionment warrants to issue.

6. SAME.—It is not necessary that an ordinance for a street improvement, or the contract and apportionment made pursuant thereto, should be spread in full upon the records of the city council.

7. SAME.—While a square may be of such dimensions as to authorize the conclusion that it was never contemplated that so large a territory should be deemed a square within the meaning of the provisions of the charter as to street improvements, the mere fact that a square is larger than the usual squares of the city will not authorize such conclusion.

8. SAME.—The fact that an ordinance for the construction of a carriage-way in a street merely defines the width of the way, and leaves it to the engineer to locate the way, will not enable the owners of abutting property to escape the burden for the cost of the improvement, al-

though the engineer may not have located the way in the center of the street so as to leave equal spaces on either side of the carriage-way for sidewalks, the property-owner not being entitled, as a matter of right, to have a certain space assigned him for making a sidewalk.

LANE & BURNETT and S. B. RICHARDSON for NEVIN.

1. Assessment for street improvement should extend an equal distance on each side of the street, except when there are parallel streets on each side already dedicated—then the assessment to extend one-half of the distance between the streets on each side.    (12 Bush, 586, Preston v. Roberts.)

2. When land is not divided by principal streets into what might reasonably be regarded as squares, it is the duty of the city council to fix the limit of the taxing district approximately to divisions into ordinary squares.    (10 Bush, 181, Caldwell v. Rupert.)

B. F. BUCKNER and BACON & STILES for ROACH, &c.

1. A street in a city means a road-way near the center with sidewalks on either side.    (91 U. S., 37, Brown v. Piper; 99 U. S., 592, Terhune v. Phillips; section 4, Ordinance of August 21, 1880, Burnett's Code.)

2. A street must be located and constructed as required by ordinance, and a departure therefrom destroys the right to assess the adjacent property-owners for the improvement.    (4 Bush, 464, Hydes & Goose v. Joyes.)

3. To vest in a purely ministerial officer a discretion, judicial in its character, and to make him the final judge of his own acts therein, is unconstitutional.    (96 U. S., 104, Davidson v. New Orleans; 6 Ky. Law Rep., 638, Louisville v. Cochran; Ky. Law Rep., Nov., 1886, Johnson v. Terrell.)

4. There can be no assessment for local improvement except to the extent of advantages received, and not then without a hearing before a properly organized tribunal..    (9 Dana, McQuillan's Heirs v. Lexington.)

CHIEF JUSTICE PRYOR DELIVERED THE OPINION OF THE COURT.

These two cases were heard together in the court below, and as nearly all the questions raised in the one case apply to the other, they have been argued and will be considered as one case in this court.

The question made as to benefits to be derived from the local improvement in order to impose the burden, has been raised, if not directly decided, in many of

the reported cases, and while it has often been shown, and particularly in this case, that no pecuniary gain by an increased value of the property is apparent by reason of such improvements, it is manifest that such improvements conduce to the rapid and prosperous growth of cities, and result in increasing the value of real estate as such improvements are extended. All such assessments are made upon the idea that the property subject to such assessments is benefited by reason of the charge upon it; but to require the city or the contractor in every case to show the immediate advantages resulting to the owner from the construction and improvement of streets in the way of pecuniary benefit, would be to prohibit in effect such improvements by means of local burdens. As said by the special chancellor below, the land may be benefited in many ways not easily determined upon the basis of money value. Such improvements make the land more desirable to purchasers, and creates conveniences that the owner would not otherwise have; and while corner lots and the land bordering on the street are necessarily increased in value, it must also affect the value of contiguous property within the square, although, at the time the improvement is made, the increased value may be difficult to ascertain. Corner lots are, therefore, taxed higher by the provisions of the city charter than the lots less advantageously located, the object being to make the burden as equal and uniform as practicable.

This method of assessment has been so long followed by the city government and approved by this court that it no longer remains an open question, and the

same may be said of the question of notice to the tax-payer that he may appear and show why he should not pay his proportion of the cost of the improvement.

The inquiry was made in the court below as to the character of the burdens imposed, and where the exactions are illegal the tax-payer can be heard and the assessments of the municipal government supervised when it has transcended its power, or has imposed burdens that are so oppressive as to amount to a confiscation of his property. He then has his day in court. The city government must judge of the necessity for the improvement, and is not required to consult the wishes of those who are to be taxed to pay for its construction. Notice was given of the time and place for receiving the work, or for a hearing by the parties interested, and if none had been given, the appellants are now objecting to the validity of the assessment, etc. "In all such cases," says Mr. Justice Field, in Hagar v. Reclamation District, "all the opportunity is given to the tax-payer to be heard respecting the assessment, which can be deemed essential to render the proceedings due process of law." 111 U. S., 707; see also Preston v. Roberts, 12 Bush, 570.

In the case of Thomas Watson and others, one of the cases being considered, the improvement consisted in the construction of a carriage-way on Chestnut street to the east line of Twenty-sixth street, to be thirty-six feet in width, and improved by grading, curbing and paving with macadam pavement, with corner-stones at the intersections of streets and alleys, block stone gutters and footway crossings, etc., in

accordance with the provisions of an ordinance approved twenty-first •of August, 1880, entitled general ordinance concerning the improvement of streets.   The contract was entered into between the city and Nevin, the contractor, and the work executed in compliance with the contract and the ordinance directing the improvement.

Various objections were made in the court below to the manner in which the ordinance was passed, all of which were properly disposed of by the chancellor.

, It was objected that several ordinances for improvements were passed at one time as one ordinance, and, therefore, the charter requiring that an ordinance shall embrace but one subject, and that to be expressed in the title, was, in effect, disregarded.   This contention by the appellant is based on the fact that the clerk in making the entries, for the sake of brevity and to save time and space in making the orders, recites that ordinances for the improvement of streets A, B, C and D were passed, etc.   There is nothing in such an entry to show that the organic law of the city has been violated; but, on the contrary, the presumption is, or should be, that the ordinances were voted upon separately, as the charter requires.

The parol proof shows that such was the case, and if incompetent to supply the record, it strengthens the presumption that would be indulged if such testimony was not in the record.

The charter also provides that no ordinance shall be passed until it shall have been read in each board at two several meetings, etc., "unless this provision be suspended by a vote of all the members elect in which

the proposed ordinance is pending ; nor shall any ordinance embrace but one subject, and that expressed in the title."

The record shows that a member of the board introduced the following ordinances, which were read once and ordered to be read a second time, etc. The second reading being dispensed with, etc., the same were passed by the following vote. It is argued that the second reading should be dispensed with at a subsequent meeting of the board, or that the record should show at the subsequent meeting that the second reading had been dispensed with.

In Dulany v. Bowman, MS. Opinion, delivered in January, 1875, this question was disposed of : "To dispense with the second reading was to dispense with the reading a second time at a subsequent meeting. Having dispensed with the one second reading, it was not necessary to recite in the record that such reading at a subsequent meeting had also been dispensed with."

The apportionment of the burden was reported in this case by the engineer to the city council, and his report adopted. It then became the act of the council, as much so as if the council had made the estimate and directed the apportionment warrants to issue.

Another objection is made to the validity of the ordinance and the proceedings under it, because the ordinance, contract, apportionment, etc., are not all spread in full on the journals of the city legislature. These journals show a complete record, with the exception that the entire ordinance, contract, etc., do not appear in full, etc.

It appears that an ordinance for the improvement
of Chestnut street to the east line of Twenty-sixth
street was introduced—passed by the following vote—
then the contract, and who with, and the message
from the mayor, etc., asking its approval. Every
order appeared showing a compliance with the char-
ter, but the entire contract, ordinance, etc., are not
written in full. Nor is this necessary—not more so
than to require every paper that is filed in a court
of record to be spread in full upon its record book;
besides, there is a record book kept by the council, in
which the ordinances in full appear. The proceedings
are sufficiently certain and authentic, and the case of
The City of Louisville v. McKegney, 7 Bush, 651, has
no application, as in that case no journal whatever was
kept of the proceeding. Other objections were made
as to the grading, etc., that appears upon the maps
reported, as well as other questions involving the
authenticity of the proceeding, that were fully con-
sidered in the court below, and now approved by this
court. In fact, nearly every question raised has here-
tofore been passed on, and if not, the exhaustive and
convincing opinion of the special chancellor should set
such questions at rest. Since this improvement has
been made, a street has been dedicated and accepted by
the city, called Madison street, running parallel with
Chestnut and Walnut streets, and dividing the terri-
tory as it existed when the ordinance in controversy
was passed. It was urged in the court below, and has
been argued here, that when the ordinance was enacted
Madison street was, in fact, one of the streets of the
city, but we find a decided preponderance of the testi-

mony opposed to this view of the case.  The owners
had in contemplation the dedication of the street, but
it had never been accepted by the city, and, therefore,
the case must be considered without regard to such a
street, as it was not in existence when the improve-
ment was ordered and the contract entered into, or
when the work was completed.  The dimensions of
the square between Chestnut and Walnut streets,
although larger than the usual squares of the city,
and much larger than the square on the south side of
Chestnut street, affords no argument against the impo-
sition of the tax.  The square might be of such dimen-
sions as to authorize the conclusion that it was never
contemplated that a territory embracing so much land
in one square should be deemed a square within the
meaning of the law.  Such is not the case here.
Squares, when considered for the purposes of taxation
within the city of Louisville, are of different shape and
dimensions, and if unequal taxation in the one case
it must apply to all, and the council and the courts left
to determine the dimensions of the square, or the par-
ticular location of the property within it, in order
to regulate the amount of assessment.

The entire system under which these improvements
have for years been made in the city would be sub-
verted, and those in authority with no fixed rule to
guide them in imposing such burdens; therefore the
necessity for adhering to a rule recognized and estab-
lished for so long a period, although cases of individual
hardship may now and then arise.  The judgment as
to Watson and wife is affirmed.

In the case of Nevin v. John G. Roach and others,

the same questions have been raised, the distinguish-
ing feature between the cases consisting in the failure
of the council in the Roach case to locate the way in
the street for the improvement. The chancellor below,
holding that this was error, dismissed the petition.

The ordinance provided, "that the carriage-way of
Broadway, from the centre line of Twenty-sixth street
to the western boundary line of the city, shall be fifty
feet in width, and shall be improved by grading, curb-
ing and paving with the macadam pavements, with
corner-stones at the intersection of streets and alleys,
block stone gutters and footway crossings across all
intersecting streets and alleys," etc. The contract
being awarded to the appellant, he proceeded to con-
struct and did construct a carriage-way fifty feet in
width as provided by the ordinance, under the super-
vision of and as designated by the city engineer, and
when completed the work was received by the city.
The chancellor below held that the carriage-way should
have been located in the center of Broadway, so as
equal spaces should be left on either side of the car-
riage-way for sidewalks; and as the contractor or
engineer had so located the improvement as to leave
a space for sidewalks much greater on the one side
than the other, with scarcely any space for sidewalks
on the one side, that no recovery could be had, and
dismissed the petition of the plaintiff. The dismissal
was based on the idea that the ordinance should
have located the carriage-way, and not left it to
the engineer; that to confide such discretion to the
engineer was a delegation of legislative power the
council could alone exercise. It is made the duty of

the city engineer to take the control and supervision of all work executed by the city consistent with the terms of the contract, and in the absence of any statute or law of the city locating the carriage-way in the center of the street, or requiring it to be so located, we perceive no reason why the failure to do so destroys the right of recovery by the contractor against the owners of the adjacent property, by subjecting it to the payment of the contract price. There was nothing in the contract or ordinance by which sidewalks were to be constructed, or any space of ground required to be left upon which to construct them. While it may be proper, and is in fact essential, that sidewalks should be constructed on each side of the street, as no provision was made for this work in the contract, the owners of the adjacent property as well as the city may have them improved. It is said, and the plat before us so indicates, that the northern boundary line of Broadway is straight continuously from Eighteenth street to the city limits, and that the irregularity is on the southern boundary line from Twenty-sixth street to the city limits, owing doubtless to the location of the lots bordering on that boundary; but whether so or not, we see no cause for complaint on the part of the lot-owner after the work has been completed and received by the council, for no other reason than the failure to locate the carriage-way in such a portion of the street as would prove the most advantageous to the adjoining property.

In the case of Vollman v. Meyer, MS. Opinion, January term, 1880, this court said: "There is no law prescribing any particular plan for the laying out or im-

provement of streets, or requiring that they should be
of uniform width, or that all parts of the same street
should be of the same width; nor does the law re-
quire that there should be sidewalks on each side or
on either side.''

That opinion was based on the provisions of the act
of fourteenth of April, 1874, which is a general ordi-
nance concerning the improvement of streets, and since
that time we have been referred to no general or special
ordinance fixing the location of a carriage-way upon
any of the streets of the city.

In the case of Hydes & Goose, Assignees, v. Joyes, 4
Bush, 464, a discretion was left to the *engineer* to de-
termine what improvements should be made, and after
the engineer had directed the improvement, the work
was to be done subject to his control and supervision.
So in this case, if the city council had conferred upon
the engineer the right to determine whether this car-
riage-way should or not be constructed, it would, as in
Hydes & Goose v. Joyes, have been delegating to him
legislative power; but we find that the council has
ordered the carriage-way to be made fifty feet in width
from Twenty-sixth street to the western limits of the
city.    The engineer whose duty it was to supervise and
control the work entered upon the street with the con-
tractor and made the improvement as directed by the
city legislature.    The way was constructed in a public
street, and while one who is compelled to contribute to
pay for the improvement may assail the irregularity
of the proceeding, if the ordinance and the proceed-
ings under it are valid, the objection merely that the
street is too near the adjacent property on the one side,

and too far from the adjacent property on the opposite side, is unavailing. Such complaint should have been made to the engineer or council before the work was completed, and the chancellor will not withhold the remedy afforded the contractor for any such reason.

If the owner of the adjacent property is entitled as a matter of right to have a certain space assigned him for making a sidewalk, it would present a different question; but whether such sidewalks shall be constructed is a matter with the local legislature and not a right that the citizen can assert upon the construction of a carriage-way or other street improvement. It is true, the owner of a lot bordering on a street may have an easement in it, as well as peculiar privileges that do not belong to the public generally. They are certainly more interested in the street fronting their property than a stranger; but having no right to a sidewalk in connection with the improvement made in the street, and with no prohibition of the right to have one constructed by the consent of the local authorities, we see no reason why they should interpose an objection to the location of a way in the street, after the improvement has been made and accepted, because the location of the way renders the construction of a sidewalk more difficult, or requires a larger expenditure for its construction, than it would have cost if the carriage-way had been in the center of the street.

The judgment in the case of Nevin, &c., v. Roach and others, is, therefore, reversed, with directions to enforce the lien and for proceedings consistent with this opinion.