## Baker, Mayor, et al. v. Combs

(Decided March 21, 1922.)

### Appeal from Perry Circuit Court.

1. Municipal Corporations—Constitutional and Statutory Provisions—Officers.—Section 160 of the Constitution provides, that an officer, such as a chief of police, in a city or town may be elected by the qualified voters, or appointed by the local authorities, as the General Assembly may by law provide, but, if elected by the voters, he shall hold his office for four years.

2. Municipal Corporations—Officers.—By section 3504, Kentucky Statutes, the legislature delegated to the council of cities of the fourth class, the power to appoint a chief of police, or to permit the voters of the city to select one, as it may prescribe by ordinance enacted before any November election.

3. Municipal Corporations—Officers—Ordinances.—An ordinance of the council providing for the election of a chief of police, to fill a full term, continues in force and designates the manner of selecting a chief of police, until repealed.

4. Municipal Corporations—Officers—Term of.—The legislature is without power to limit the term of an officer elected by the voters of a fourth class city for a full term, to two years.

5. Municipal Corporations—Ordinances—Records.—A record of the proceedings of a council of a town of the fourth class, concerning the adoption of an ordinance, which shows all the facts which any statute or ordinance requires, will be presumed to have been regularly adopted and that the law was complied with in its adoption, and the burden is upon one alleging its invalidity to show it.

6. Municipal Corporations—Rules Governing Proceedings.—Where the statute empowers a town council to adopt rules to govern its proceedings, and it does so, the rules adopted as ordinances are as binding upon it as statutes are.

7. Municipal Corporations—Ordinances—Records.—Where in the adoption of an ordinance by a council, the record of the proceedings shows all that is required by the statutes was done, if there are any vitiating facts, they may be shown by evidence other than the record of the proceedings.

8. Municipal Corporations—Ordinances—Validity.—An ordinance of the town of the fourth class, to make it valid, does not have to be spread at large upon the record of the proceedings of the council, if the proceedings are sufficiently definite to identify and authenticate it, and the council provides a book, in which to record its ordinances, and it is therein recorded.

9. Officers—Actions for Recovery of Office—Allegation and Proof.—One who sues in his own name to recover an office must allege and prove his eligibility to hold the office, as well as his legal election or appointment, but, personal characteristics, such as soberness, morality and sagacity, which he must possess to be eligible are matters of defense, like convictions for felony and disfranchisement, and need not be anticipated.

DENNY P. SMITH, WOOTTON, SMITH & WOOTTON and GEO. E. SAUFLEY for appellants.

W. A. STANFILL, H. C. FAULKNER, W. E. FAULKNER and SAMUEL WARD for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Affirming.

This appeal involves the soundness of the judgment of the trial court in determining, who is· entitled to the office of chief of police of Hazard, for a term beginning on the first Monday of January, 1922. The appellee, who was the plaintiff below, instituted this action against the mayor and members of the council of the town, and one Wooton, who was assuming to act as chief of police, averring that he, the appellee, had been duly elected to the office of chief of police by the voters of the town at the regular election in November, 1921, and that the mayor and council refused to allow him to qualify, or to exercise the duties of the office, and refused to recognize him as the legal holder of such office but instead thereof had appointed Wooton to the office, permitted him to qualify, and that he was now exercising the duties of the office and receiving its emoluments, but that his installation in the office was illegal, and he was thus an usurper. The plaintiff relied for his right to recover the office upon an alleged ordinance which was adopted by the council on August 4th, 1919, providing that a chief of police be elected by the voters of the town, at the regular election in 1919, for the term beginning on the first Monday of January, 1920, and that in pursuance of such ordinance, he was duly elected to the office by the voters of the town, at the November election, 1919, and duly qualified under such election, and filled the office during the years 1920 and 1921, and in virtue of the ordinance was re-elected at the November election, 1921. His prayer was for a writ of mandamus against the mayor and members of the council, requiring them to permit him to qualify, under the latter election, and to recognize him as chief of police and for a judgment ousting Wooton from the office, and enjoining him from interfering with its duties. The judgment granted to the appellee the relief sought, and the mayor and council and Wooton have appealed.

Section 160 of the Constitution, after certain provisions relating to the mayors, police judges and members of legislative boards of towns, and prescribing the duration of their terms of office, contained the following provisions, viz.:

"But other officers of towns and cities shall be elected by the qualified voters therein, or appointed by the local authorities thereof, as the General Assembly may by law provide; but when elected by the voters of a town or city their terms of office shall be four years, and until their

successors shall be qualified. . . . The General Assembly shall prescribe the qualifications of all officers or towns and cities, the manner in, and causes for which, they may be removed from office, and how vacancies in such offices may be filled.''

The General Assembly in providing by a general law for the appointment or election of a chief of police in a fourth class town, to which class Hazard has been duly assigned, enacted the following statute which is section 3504, Kentucky Statutes:

''The board of council shall have power to appoint a chief of police or he shall be elected by the voters of the city as may be prescribed by ordinance, enacted not less than sixty days previous to any November election, who shall hold his office for a term not longer than two years, or until his successor is appointed or elected and qualified, subject to the power of removal, for good cause, at any time by the board of council.''

The above statute seems to empower the council to appoint a chief of police, or to change the method by authorizing the voters of the city to elect one by enacting an ordinance bestowing such authority at any time, ''not less'' than sixty days previous to any November election, and on the 4th day of August, 1919, it is averred, that the council in exercise of the authority delegated to it to provide by ordinance for the election by the voters of a chief of police, as provided by section 3504, *supra,* adopted the following ordinance:

''ORDINANCE.

''CHIEF OF POLICE OF THE CITY OF HAZARD.

''The city council of the city of Hazard do ordain as follows: That the chief of police of the city of Hazard shall be elected by the qualified voters of the city of Hazard at the regular November election, 1919, and his compensation shall be fixed by the council.''

On the date of August 14th, 1919, as appears from the certificate of the city clerk, the following record of the proceedings of the council on that day is upon the minute book of the council:

''August 14, 1919.

''The council met in regular session with mayor W. M. Pursiful absent. Councilmen H. M. Baker, James Combs, Jerry McIntosh, A. G. Duff and L. F. Brashear, present. Councilman W. M. Engle absent. . . .

"Three ordinances were introduced, that the city treasurer perform the duties of city collector; that the city treasurer be elected; that the city clerk be elected; that the chief of police be elected, all of which ordinances were considered and adopted, and the clerk was directed to spread the same upon the city ordinance book in full. . . .

"On motion the meeting adjourned until Thursday, August 7th, 1919.

"GEORGE E. SAUFLEY,                L. F. BRASHEAR,
         "Clerk.                    Mayor *pro tem.*"

Under section 3504, *supra,* there could be no question of the power of the council, if exercised in the manner and time prescribed, to provide for the election of a chief of police in a fourth class city, by the voters thereof, as the General Assembly may delegate to a city council the power to legislate about matters pertaining to the city, and about which the council is presumed to have the better knowledge; but it is insisted by the appellants, the mayor, members of the council and Wooton, that the ordinance of the council of August 4, 1919, is invalid, and if not invalid that it only applied to the election for the term beginning on the first Monday of January, 1920, and for that reason did not authorize the election of appellee at the November election, 1921. The validity of the ordinance is assailed upon several technical grounds among which are:

(1) It is not shown that this was the ordinance mentioned in the minutes of the proceedings of the council on August 4, 1919.

(2) The record proof fails to show that the ordinance was ever read, adopted or approved.

(3) It was never signed by the mayor.

(4) The proceedings of the council were signed by Brashear as mayor *pro tem.*, but it is not shown that he had any authority to act as such.

(a) Touching the first objection made to the validity of the ordinance, it will be observed that it is recorded in a book provided and kept by the council for a record of its ordinances, and as provided by section 3488, Kentucky Statutes, is a public record to be preserved and "entitled to full faith and credit as such." Section 3487, Kentucky Statutes, requires the clerk of the council, who is a public officer, immediately after an adjournment to cause to

be published every ordinance adopted at the meeting, and to preserve a copy of the publication. The minutes of the proceedings show that the clerk was directed to spread the ordinance in question upon the book provided for that purpose. As spread upon that record, it is of even date with the meeting of the council, upon the same subject and of the same import as the ordinance shown by the minutes to have been adopted by the council upon that date, and purports to have been upon that date. There is no pretense that this ordinance was not duly published or that a copy of the publication was not preserved by the clerk. Every public officer in the absence of a showing to the contrary, is presumed to have done his duty. We think the ordinance is sufficiently identified and authenticated as the one mentioned in the minutes of the council as having been adopted upon that occasion.

(b) The appellants aver that the ordinance was never read, adopted or approved by the council. These averments were denied by the appellee. The statute is silent upon the subject of reading an ordinance in full before its adoption, and does not require the minutes of the proceedings to show that such was done, but appellants rely upon an ordinance, adopted by the council at some time or other, which required every ordinance before its adoption to be read in full and to receive the affirmative votes of a majority of the members present. The copy of this ordinance in the record does not show the date of its adoption, and hence it cannot be known whether or not it was in force on August 4, 1919, when the ordinance upon which appellant relies was adopted, but be that as it may, it does not require that the fact that a proposed ordinance was read and received the affirmative votes of a majority of the members present to be shown by the record, in order to make it a valid ordinance. Section 3486, Kentucky Statutes, empowers the council to make and adopt rules to govern its proceedings, and where such is the fact, it is doubtless true that rules adoped by it are as binding upon it as a statute. 19 R. C. L. 890; Montenegro-Rheims, etc. v. Board of Education, etc., 145 S. W. 740. The rule would be otherwise, if adopted from the inherent authority of the council. An ordinance such as the one providing for the election of a chief of police by the voters must be distinguished from such a one as that provided in section 3489, Kentucky Statutes, where a "yea" and "nay" vote is re-

quired, and how each member voted is to be recorded in the journal of the proceedings. With regard to such ordinance, as the one in question, the statute uses the word "pass" which as applied to a legislative body includes the voting for it by a majority of a quorum, and all the necessary formalities required, except in such instances as require a specified percentage of the membership of the body to be shown to have voted for it. The proceedings show that the ordinance was "presented," "considered and adopted," and ordered to be transcribed in the book for ordinances. The courts never require the same exactness in the keeping of the records of the council in a town of the fourth class, as is required in the case of courts of record, because usually done by persons who are not experts. Trustees of Hazel Green v. McNabb, 23 K. L. R. 811; Town of Mt. Pleasant v. Eversole, 29 K. L. R. 830. As in the instant case, where the record of the proceedings, in the adoption of the ordinance, does not show a violation of the statute, or ordinance having the force of a statute, or the failure to comply with the mandatory provisions of one it will be presumed that the council in its adoption complied with all the necessary requirements, and the ordinance appearing to be regular, the burden is upon one who denies its validity, to show it, and where the record of the facts, as here, only shows what is required by the statutes and ordinances, the vitiating facts may be shown by evidence other than the record. Nevin v. Roach, 86 Ky. 498; Louisville v. Hyatt, 2 B. M. 177; Lexington v. Headley, 5 Bush 508; Monticello v. Bates, 173 Ky. 244; Weatherford v. Cody, 27 K. L. R. 631; Muir v. Bardstown, 120 Ky. 739. The record of proceedings, in the instant case, appearing regular and not exhibiting any violation of the statute, or the ordinance governing such proceedings, nor a failure to comply, it will be presumed that in the absence of evidence to the contrary that the ordinance was read in full to the council and received a majority of the votes of all those present in its favor, before its adoption. The ordinance was approved at the time of its enactment, as there is no requirement that an ordinance be considered at more than one meeting of the council. Another fact assigned, which it is insisted is fatal to the validity of the ordinance, is that it was not spread at large upon the record of the proceedings of the council. The spreading at large of an ordinance on the record of the proceedings of a council

was held to be unnecessary to its validity in Nevin v. Roach, *supra,* where the court said that such was no more necessary than that a paper filed in court should be spread at large upon the record, especially where a record in the nature of a book was kept wherein the ordinances were recorded, and the proceedings were sufficiently authentic and certain as to the identity of the ordinance, and this, although the statute as relating to the council, requires the clerk to keep a complete record of its proceedings. Section 3487, *supra.*

(c)   Section 3503, Kentucky Statutes, provides that the mayor shall sign the proceedings of every meeting of the council, when the same have been written up and approved by the council. The signing in this instance seems to have been done by Brashear, who signed as mayor *pro tempore.* Section 3486, Kentucky Statutes, provides that in the absence of the mayor, a mayor *pro tempore* may be selected from the members of the council, and the proceedings show that Brashear was a member of the council. The section, *supra,* also provides that the person selected as mayor *pro tempore* shall not perform the functions of the office, unless the mayor has been absent from the county for at least three days, or is unable to discharge his duties, and appellants allege, that at the time, the mayor was in the city of Hazard, and had not been absent for a period of three days, or any time, and that Brashear was not elected mayor *pro tempore.* These averments were denied and no evidence was heard upon the subject. There was no averment, however, that the mayor was able to perform his duties. The record of the proceedings at the meeting on August 4, 1919, does not show that Brashear was elected mayor *pro tempore* upon that occasion, but there was nothing to show that he had not been previously elected, and it will not be presumed that he had usurped the office, or that either he or the council were proceeding without authority, and the burden was upon the appellants to prove the facts which made Brashear's actions without authority. Section 3503, *supra,* provides: "The mayor shall have power to approve or veto any ordinance or resolution. Any ordinance or resolution vetoed by the mayor, or chief executive, may be passed over his veto by a vote of two-thirds of the whole number of councilmen, and should the mayor refuse to sign any ordinance or resolution, or return the same to the city clerk with his objection in writing within ten days after its passage, the same shall take effect with-

out his signature." All that the record or any evidence shows is that the mayor did not veto the ordinance and return it to the clerk, with his written objections, nor did he approve it by signing it, and hence in the terms of the statute quoted, it took effect without his signature.

(d) Having arrived at the conclusion that the ordinance of August 4, 1919, providing for the election of a chief of police by the voters at the November election, 1919, was valid, the question arises as to what was the effect of the election of appellee at that time. We do not understand from the pleadings that appellants deny the election of appellee by the voters at that time, but merely deny that the election was valid, because not authorized by a valid and legal ordinance, and, therefore, a nullity. Of this, however, we do not agree, as heretofore shown, and the election of appellee at that time for the term beginning the first Monday of January, 1920, was authorized by the ordinance of August 4, *supra*, and valid, if otherwise regular. From the fact that an ordinance was adopted at that time, providing for an election by the voters, it is presumed that theretofore the chief of police had been appointed by the council, and that he held his office for a term of two years, counting the terms from the November election, 1893, which would cause the term to expire with the year 1919, and would make the election of a successor due at the November election, 1919, if provided for by ordinance, or the appointment of one was due at the end of that year. If the method of selection by appointment had continued, the term would have been for the two years of 1920 and 1921. Section 3504, Kentucky Statutes, makes the term two years, whether by election or by appointment, and under section 160 of the Constitution and the statute mentioned when the office is filled by appointment, the term is not longer than two years, but that section of the Constitution mandatorily provides that when an officer of a town or city is elected by the voters of it, the term shall be four years, which would extend the term of appellant to the first Monday of January, 1924, if he was duly and regularly elected by the people at the November election, 1919. Section 3504, *supra*, so far as it provides that the term of a chief of police, when his election is authorized to be made by the voters of the city, shall be only for a term of two years, is invalid, because the legislature had no power, in the face of the constitutional provision, to enact a law limiting the term to two years, when elected by the voters.

The invalid part of that statute can be eliminated from it without affecting the remainder of the statute, and leaves it in force otherwise. Hence when the council authorized the election of a chief of police by the voters at the regular election, November, 1919, and an election was held, the incumbent was elected for a term of four years, and his term would continue until the first Monday of January, 1924, subject to removal for cause, and his mistaken belief that the term ended at November, 1921, did not lay him liable to be ousted from the office. Pinkston v. Watkins, 186 Ky. 365; Watkins v. Pinkston, 190 Ky. 455. Section 3485, Kentucky Statutes, provides that the elective officers of towns of the fourth class "shall be elected at the times and for the terms prescribed in the Constitution." When the council by ordinance changed the office of chief of police from an appointive into an elective one, the provisions of the Constitution relative to elective offices of cities and towns apply. The election in 1919, was in an odd year, as provided in section 167 of the Constitution, and at an election when state and city officers were elected.

(e) Conceding, however, that it is not altogether clear whether appellee was elected by the voters, at November, 1919, and if there was no election by the voters, and the failure to elect resulted in a vacancy, which was filled by appointment, after the office was made an elective one, his election, at the November election, 1921, was to fill the office for such a portion of the elective term, as is allowable under section 152 of the Constitution and section 3485, Kentucky Statutes, when construed together, and the question arises, as to whether the ordinance of August 4, 1919, is to be construed as authorizing the election by the voters of the town, of a chief of police, thereafter, at the times and for the terms, as provided by law, as in the case of any other elective officer, until the ordinance should be repealed, or whether it only applied to the November election, 1919, and then expired by its own terms. The election provided for by the ordinance was not to fill a vacancy, in the office, for a portion of an unexpired term, but, to elect a successor to the then incumbent whose term by appointment did not expire until the end of the year, 1919. It expressed the purpose of the council to change the method from an appointive to an elective mode of election and was an ordinance, which the council had the power to make effective by adoption, sixty days before "any November election." Section

3504, *supra.* In this, the statute, authorizing it, is very dissimilar to section 3484, *supra,* relating to an ordinance providing for the election of a mayor, as that statute required the ordinance to be enacted "in the year" in which the appointment or election was due to be made. The ordinance changing the method of selecting a chief of police, was evidently intended to control the manner of so doing, until repealed, which the council may do, at any time, sixty days preceding any November election, and is to be construed as held in Sally v. Baker, 180 Ky. 833.

(f) It is insisted that the judgment is erroneous, because the appellee did not prove his eligibility to hold the office. It is true, the courts will not assist one, who would be an usurper if in an office, to oust another usurper from it, and that a party who is ineligible can not recover an office from another, although elected, and this makes it necessary for one seeking the aid of the courts, to recover an office, to allege and if need be to prove his eligibility. Dorain v. Walter, 116 S. W. 313. To the rule, however, there are several well known exceptions, as will hereafter be shown. Section 3493, Kentucky Statutes, requires one to be eligible to be appointed a policeman, in a fourth class city, to be a citizen of the United States and of the state of Kentucky, a resident for six months of the town, twenty-four years, or upwards, of age, a moral, sober and sagacious person, never convicted of a felony, and able to read and write the English language intelligibly. The appellee alleged in the petition all the things necessary to show his eligibility required by the statute, except that he was a "sober, moral and sagacious" person. These averments were not denied, and hence no evidence was necessary to support them. He alleged in an amended petition, that he was a "sober, moral and sagacious" person, and the allegations of the amended petition were ordered controverted upon the record. Hence, if it was necessary to support his cause of action, that he should prove that he was a sober, moral and sagacious person, his action failed. It will be observed, however, that section 3493, *supra,* relates only to the eligibility of policemen, who are appointed by the council, and that section 3504, *supra,* which relates to the chief of police, does not require the elements of eligibility required of an ordinary policeman, and hence it is a matter of doubt, if section 3493, *supra,* related to a chief of police, as the legislature appears to distinguish him from an ordinary member of the police force, and he would be required to

possess only such elements of eligibility, as are required of all officers. Conviction of a felony, a judgment of disfranchisement, or engagement in a duel renders one ineligible to hold a public office, but, a plaintiff does not have to anticipate in his petition, and allege that he has never been the victim of a conviction for a felony or a judgment of disfranchisement, or has never engaged in a duel. They are matters of defense and must be preferred by one, who would overcome the *prima facie* case of the plaintiff. They are circumstances affecting moral character, which the laws have said should disqualify. Want of virtues, affecting the moral character, such as soberness, morality and sagacity, and which go to make ineligibility, should not be of more dignity than a conviction for felony or a judgment of disfranchisement, and for that reason, it seems should also, be an exception to the general rule, and the burden of showing such moral defects should rest upon those asserting them as a want of eligibility, and in such case need not be anticipated by a plaintiff, as there should be no presumption that one elected to office by the people is immoral, drunken or foolish.

The judgment is therefore affirmed.