In the Matter of GENNARO DEODATI, Respondent, against
PAUL J. KERN et al., Constituting the Municipal Civil
Service Commission of the City of New York, Appellants.

Argued April 12, 1939; decided May 23, 1939.

*William C. Chanler,* Corporation Counsel (*Robert H. Schaffer* and *Paxton Blair* of counsel), for appellants. The provisions of the order that the new filing date shall be advertised for a period of at least two weeks before receipt of applications and that applications received at the time of filing shall be verified are not founded upon any provision of the Civil Service Law (Cons. Laws, ch. 7) and rules, and constitute a substitution by the court of its judgment for that of the Commission intrusted by law with discretion to determine such matters. (*Matter of Gluck* v. *Rice,* 265 N. Y. 132.)

*Leopold V. Rossi* for respondent. The age requirement for the examination is illegal. (*Matter of Michner* v. *Kern*, N. Y. L. J. p. 1369, March 25, 1939; *Matter of Ryan* v. *Kern*, 166 Misc. Rep. 548; 253 App. Div. 713; 277 N. Y. 739.) An age limitation set by a commission barring persons from competing, participating or registering in a test must be based on reason and logic. (*Matter of Ryan* v. *Kern*, 166 Misc. Rep. 548; 253 App. Div. 713; 277 N. Y. 739; *People ex rel. Moriarty* v. *Creelman*, 206 N. Y. 570; *People* v. *Moskowitz*, 175 App. Div. 710; 220 N. Y. 669; *People ex rel. Schau* v. *McWilliams*, 185 N. Y. 92; *Matter of Sheridan* v. *Kern*, 255 App. Div. 57.) Respondent has a right to maintain the proceeding. (*Matter of Andresen* v. *Rice*, 277 N. Y. 271; *Matter of Kornbluth* v. *Rice*, 250 App. Div. 654; 275 N. Y. 597.)

FINCH, J. This is an appeal by leave of the Appellate Division, first department, from an order entered by that court affirming an order entered at Special Term of the Supreme Court, New York county, directing the Municipal Civil Service Commission of the City of New York to cancel 9,365 applications for the position of porter, labor class, and to readvertise for a period of at least two weeks for new verified applications for the position omitting the maximum age requirements.

The appeal thus concerns the right of the Municipal Civil Service Commission of the City of New York to prescribe maximum age requirements for candidates for the position of porter, labor class, under section 25-a of the Civil Service Law (Cons. Laws, ch. 7; Laws of 1938, ch. 485, effective April 4, 1938), which reads as follows:

" § 25-a. Applicants for civil service positions; age discrimination prohibited. Notwithstanding any provision of law to the contrary, except as herein provided, neither the state civil service commission nor any municipal civil service commission shall hereafter prohibit, prevent, disqualify or discriminate against any person who is physically and mentally qualified from competing, participating or registering for a civil service competitive or promotional examination

or from qualifying for a position in the classified civil service by reason of his or her age. Any such rule, requirement, resolution or regulation of such state or municipal commission shall be void.

" Nothing herein contained, however, shall prevent such state or municipal commission from adopting reasonable minimum or maximum age requirements for positions such as policeman, fireman, prison guard, or other positions which require extraordinary physical effort, except where age limits for such positions are already prescribed by law."

It appears upon this record that the Municipal Civil Service Commission proceeded with good faith to construe and carry out the intention of the Legislature as to the meaning of the phrase " extraordinary physical effort." This good faith was evidenced by the membership of the committee appointed to assist it in the carrying out of its duty. Senator Livingston, who was a co-sponsor of the legislation, was invited and served upon the committee which sought to establish a standard for positions requiring extraordinary physical effort within the purview of the Civil Service Law (§ 25-a). In its memorandum submitted to the Commission, this committee reported that their standard of interpretation of the construction of the bill was strengthened by the legislative history of its enactment. Assemblyman Wadsworth, co-author of the bill, in the course of a debate upon the bill, said: " Certainly compared to bookkeepers, librarians, medical inspectors, statistical clerks and so on, the street cleaner employs extraordinary physical effort, but if that language would not cover such positions then I am perfectly willing to amend this bill in such a way that such an interpretation by the civil service commission would be obligatory. Personally, I think the present language covers it." Accordingly the committee recommended, as a sound formula for interpreting the nature of positions requiring extraordinary physical effort: " If the amount of the physical effort expended, or subject to be expended in the performance of the duties of a given position is considerably above that expended by bookkeepers, librarians,

medical inspectors, and statistical clerks, in the performance of their respective duties, or is comparable to the amount of physical effort expended, or subject to be expended by street cleaners, policemen, firemen, and prison guards, in the performance of their respective duties, then the given position requires extraordinary physical effort."

In addition, the Civil Service Commission was obliged to certify a list of persons who could perform any and all of the tasks assigned to porters in the public service. A report was made upon the work of porters in the City Housing Authority, where immediate vacancies existed. This report showed that in the service of the city successful candidates would be required to move heavy cans of refuse, heavy supplies and possibly iceboxes. An examination of appointments actually made by this City Housing Authority to provisional jobs as porters showed that the average age of the men employed was in the low thirties, and ranged from twenty-three to forty-three years. A recommendation was made to the Commission that the list for this examination be used as appropriate for similar positions in the Department of Welfare, the Department of Hospitals and other departments, and also for the position of porter in the Department of Public Works and Education. These positions required the performance not only of routine cleaning work but also heavy manual work, and included in this work was the moving of desks, safes, partitions, and also heavy mopping and scrubbing. It further appeared that porters employed by the Housing Authority at the houses in Williamsburg were assigned to do the work of carrying loaded ashcans along a runway and up a stairway.

The preliminary announcement of the Commission stated that applicants must file in person, and that appointments would be made in the order of filing of application Since the position was in the labor class there was no competitive examination (Civil Service Law, § 18). The age limit was fixed at " under 46 years of age on date of application, under 50 years of age on date of appointment." During the filing period, from August 31 to September 2, 1938, 9,365

persons filed applications for the position  On September 8, 1938, the first 100 who had filed were notified to appear for medical examination.  The examinations were made the following day and by September 16th the first 300 to file had been examined.

The petitioner-respondent, who was then fifty-one years of age, filed no preliminary application during the time prescribed.  He waited until September 9th, after all 9,365 applications had been received and numbered according to priority in filing, and then attacked the entire procedure.  As above stated, the court at Special Term canceled the examination and the Appellate Division affirmed, with leave to appeal to this court.

Before taking up the merits, there arises grave doubt whether this petitioner may press successfully this proceeding.  The list to which petitioner objects is in the labor class.  Here appointments are made in the order of filing applications, after non-competitive examinations.  (Civil Service Law, § 18.)  By petitioner's own allegations he knew not later than August 20th that applications were to be received beginning August 31st.  As shown in the statement of facts, during the three-day period for the filing of applications, namely, August 31st to September 2d, 9,365 persons filed applications for the position.  On September 8, 1938, the first one hundred who filed were notified to appear for medical examination.  Although the application blank furnished to candidates required only their name, address and fingerprints, petitioner filed no application and did nothing until he instituted this proceeding on September 9, 1938.  In other words, petitioner stood by until others had achieved priority and the first one hundred on the list had been examined physically.  Having failed to do what he could to enter the list, he is not in a position to attack those who have already acquired rights of priority.  Sound public policy and the orderly conduct of civil service examinations require that at least in labor class examinations any person who claims that he has been deprived of his rights by illegal age restrictions must file

or attempt to file an application and then seek an adjudication of his rights. When the examination lies in the competitive class the question does not arise for the reason that the court can always stay the examination, permitting the Commission to change the requirements if they are successfully challenged. Authorities relied on by the petitioner are not in point in the case at bar. (*Matter of Andresen* v. *Rice*, 277 N. Y. 271; *Matter of Kornbluth* v. *Rice*, 250 App. Div. 654; affd., 275 N. Y. 597.) In these authorities it was not within the power of the petitioner to register fully his objections and obtain proper relief without destroying rights of others on an eligible list. In the case at bar, were it not for his laches and delay, petitioner could have enforced his right without invalidating the entire list. The destruction of the prior rights of hundreds of applicants and the issuance of all applications *de novo* are necessary only because the petitioner failed to establish his place in the order of applications filed. By waiting until the time for filing had expired and then seeking to invalidate the examination this candidate can be fitted into the list only through its entire destruction. This means a new list and a new struggle for priority. None of these things would have happened if the petitioner had not deliberately refrained from filing an application. This deprived all those near the head of the list of their right to appointment. His action, even if valid, if brought in proper time, cannot now be sustained because of his inaction and delay.

Passing to the merits, a two-fold question remains: First, the question of the proper construction of section 25-a of the Civil Service Law, more particularly the phrase "positions such as policeman, fireman, prison guard, or other positions which require extraordinary physical effort * * *." A consideration of the language of the statute shows that the extraordinary physical effort required need not be continuous, but only that the position comprise in part such effort. The court may take judicial notice that the examples given in the statute, namely, policeman, fireman and prison guard, do not require the continuous use of

extraordinary physical effort, but only that it be available when needed. If, therefore, the position of porter may involve any duties which would come within the meaning of the phrase " extraordinary physical effort," the position is within the class denominated in the exception. Furthermore, the amount and kind of effort denoted by the phrase " extraordinary physical effort " cannot be judged by any absolute standard. As compared with the sedentary white collar occupations, such as bookkeeper, primarily requiring mental effort, the position of porter does require extraordinary physical effort. Then, too, physical effort exerted for a long duration may be as extraordinary as strength exerted in an emergency.

In applying the rule enunciated by the Legislature, petitioner lays stress on the lighter duties of the position while the Civil Service Commission considers that the position also involves the moving of furniture, heavy fixtures, garbage, ashes and other like duties. It is to be noted that the published notice required among other things the moving of fixtures, ashes, etc. As already stated, to bring a position within the statutory exception, extraordinary physical effort need not be its daily routine. Even the positions of policeman, fireman and prison guard do not measure up to that standard. The Commission properly requires that an eligible, certified under the title of porter, should be able to perform any and all of the possible duties of the position. If the work of a porter were confined to polishing brass and general light cleaning, the determination of the Commission, that the work required extraordinary physical effort, might have been open to question. If, on the other hand, the duties of the position had been restricted to the concededly heavier and more arduous tasks, the contrary conclusion would have been unassailable. It is apparent that the Municipal Civil Service Commission could reasonably find that the duties of porter involved both light work and work which would require the expenditure of extraordinary physical effort. We reach the conclusion, therefore, that the Municipal

Civil Service Commission properly decided that the duties under the title of porter brought the position within the exception of the statute. (Civil Service Law, § 25-a.)

The second part of the question on the merits concerns the propriety of the action of the Commission in fixing the age limit of porters at under forty-six years of age on the date of application and under fifty years on the date of appointment. Here, the Civil Service Commission could consider that, since no person in the city service is dismissed for old age, a man taken into the service at the age of forty-nine continues until he reaches seventy. The average age of all laborers in the city service being forty-six, the Commission properly anticipated that the lighter tasks might be assigned to the older men and that the new employees should be sufficiently vigorous to do the heavier tasks assignable. We conclude that the action of the Commission finds support in the record and that it was not arbitrary, unreasonable or beyond the scope of its discretion.

The orders should be reversed and the petition dismissed, without costs.

CRANE, Ch. J., LEHMAN, O'BRIEN and LOUGHRAN, JJ., concur; HUBBS and RIPPEY, JJ., concur on first ground stated in the opinion.

Orders reversed, etc