## Callis, Mayor, et. al. v. Brown.

June 21, 1940.

Robert M. Coleman, Judge.

760

Charles R. Bell, Guy Herdman and James W. Blackburn, Jr., for appellants.

Harlin & Harlin for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Reversing.

Appellants, the mayor and members of the council of Bowling Green, a city of the third class, were defendants to a suit instituted by appellee, involving his claimed right to continue to act as police officer of the city.

In his pleadings he alleged that he was a resident of the city, "more than 21 years of age, and that he had made application for the position on the police force prior to December 4, 1933." He was later recommended by the then mayor, and took an examination before the police committee. This body reported that it had "made the necessary examination" of several applicants, including appellee, and recommended them for patrol duties. The report failed to state that they had found applicants qualified, but here this omissio ʋ is immaterial.

Appellee executed bond; took oath and began his duties in December of 1933, serving until May, 1939, when he was promoted to the position of assistant chief of police, and served as such until December, 1939, when he was removed by a newly elected mayor and board of councilmen. He asserts that all steps taken by him and the 1933 councilmen, were in strict conformity to the then existing statutes and ordinances, and that the action of the board in discharging him was capricious, arbitrary, without charges preferred, and contrary to applicable statutes and ordinances.

He claims that at the time of his removal the board, upon a pretext of economy, due to lack of finances, undertook to reduce the police force from 18 to 12 members, though later employing others, including an alleged inspector or instructor of police, who was not qualified, and for which appointment there was no lawful provision.

He then alleges specifically facts which he contends show that the reduction of the force was not in good faith, since followed by substituting others in the stead of those attempted to be removed. His pleading sets out necessary technical grounds usually employed in seeking injunctive relief, which in this case was contained in his prayer that the board be required to reinstate him to the police force.

The defendants filed joint and separate answer, in which, while admitting allegations of the petition not subject to denial, they denied so much of the petition as was material, as they believed to a defense. They also filed an amended answer, which in the greater part was a repetition of their already too lengthy original answer. Such parts as were in fact amendatory will be noted.

Briefly, the reasons set out for removal of appellee, and which constitute their defense, may be summarized thus: (1) The original appointment of appellee, and his elevation in rank, were due solely and alone to an effort on the part of the appointing bodies to pay appellee for past political activities and services rendered in their behalf. (2) That at the time of his removal, appellant by reason of physical disability was unfit for police duty. (3) The appointment was made without examination, and without regard to qualification or lack of qualification. (4) At the time of his appointment appellee had not served as police officer for five consecutive years. (5) Appellant at the time of application was more than 50 years of age, therefore ineligible. (6) Under the applicable law the board had full power from time to time to decrease the number of policemen, as the council deemed proper, and this they did in the interest of economy. (7) Appellant was properly removed because he was not in sympathy with the newly elected council in its desire and effort to carry out a program of law enforcement, and his activities were such that he was unfit to serve as police officer.

The issues were completed by replies, except as later noted, and order controverting certain pleadings of record. Prior to the completion of issues, and at proper times, appellants demurred to the petition and replies of appellee, and he filed motions to strike the greater portions of the answer and amended answer of appellants. In fact the motion to strike appears to have gone to nearly all the material allegations of the answer, and likewise the demurrers went to most, if not all, the substantially material charges.

Upon submission the court, in an opinion in which the pleaded facts were stated, indicated that the appellee was entitled to full relief, solely as it appears, on the question of seniority rights, pointing out that the

"seven men originally appointed in 1931, and the five appointed in 1934, which five includes the plaintiff in this action, are the twelve senior members of the Bowling Green police force."

Digressing for the moment, we fail to find any then existing authority to uphold this expression of opinion by the chancellor. The court probably had in mind Section 3138-3, Kentucky Statutes, applicable to cities of the second class, which expressly provides that in cases of reduction of the force, the members older or longer in service shall have preference over those younger in the point of service, and which we construed in Singery v. City of Paducah, 253 Ky. 47, 68 S. W. (2d) 770. We have also examined the two ordinances filed with appellee's amended petition, which relate to the appointment · of and service by policemen, and fail to find that there is any provision relating to seniority rights. Whether such provision was omitted from Section 3351a-2 intentionally or otherwise, we are unable to say.

Following, in point of time, the chancellor's opinion, a judgment was entered, in which for the first time during the proceedings the court passed on the appellee's motion to strike, and all demurrers. The chancellor sustained plaintiff's motion to strike "certain portions of the defendant's answer and amended answer" which matters are "embraced in said motion and are particularly referred to and set out therein."

As indicated above, the sustaining of this motion took out of the pleadings the greater material part thereof. The court then overruled defendant's demurrer to plaintiff's petition, and sustained the plaintiff's demurrer to the answer and amended answer, on the ground that the pleadings did not sufficiently set up matters of defense.

The cause was then submitted on the pleadings and exhibits, which practically meant on plaintiff's petition and exhibits, and granted a mandatory injunction, enjoining and restraining the authorities from removing appellee; commanding them to restore his status and rights, with pay to continue as previously fixed.

Adopting the process of elimination, we may say that charge (4), as set up in answer, is of little importance in the discussion of the alleged defenses. It ap-

pears from the exhibits that there was some sort of an examination given appellee prior to his appointment. In passing on this matter of five years' previous service, we held that it exempted from examination such applicants as had served as a policeman continuously for five years from June 15, 1921, which was the effective date of the act now incorporated in the Statutes. Therefore, appellant was required to take an examination, and the presumption is indulged that the committee conducting the same performed their duties, and such presumption prevails until the contrary is shown. It may be that under a more direct charge, it would be proper to allow proof on the question.

For the purpose of brevity, we may group each and all further defenses set up in answer, save (5) and (6), since, as we view them, they present such matters of defense as would, prior to any attempt to remove a serving officer, necessitate the preference of charges with a right to be heard. It will be noted that the controlling statute, after a manner fixing such qualifications, and providing that certain persons should not be appointed, recites:

"No member or officer of the police or fire department shall be removed from the force or fire department, reduced in grade, or pay, upon any reason except inefficiency, misconduct, insubordination or violation of law or of the rules adopted by the commissioners." Section 3351a-2, Subsection 3, Ky. Statutes.

The statute then, in a not too clear manner, provides (and we have so construed it) that in all cases where the removal or reduction is attempted for any of the above specified reasons, charges must be preferred, and a hearing conducted in the manner set out in the section, supra. So, it is apparent that in order to remove or reduce in rank or pay any serving officer, on any of the named grounds, charges and hearing were necessary.

We take up now defenses (5) and (6), the one raising the question of eligibility, and the other the right of the city to reduce its force on grounds of necessity or economy. In plaintiff's petition it was alleged that at the time of his appointment he was "more than 21 years

of age." In answer it was plead that at that time he was more than 50 years of age. In amended answer it is charged that at the time of his selection he was ineligible, since he was then 57 years of age, and in "addition thereto physically unfit for police service." The latter part may be put in the classification of "inefficiency."

Going through the mass of pleadings, it is difficult to ascertain whether or not the allegations as to ineligibility, due to the age of appellant, were or were not specifically denied. In reply to the original answer there is no denial, but rather a plea of confession and avoidance, it being first alleged that several police officers have been appointed by the present board, who were over 50 years of age, and a number serving who were over 50 years of age at the time of their appointments by previous boards. If this be admitted as true, then it would serve the appellee no purpose, since the fact that the council had failed to observe the law in other instances, would not redound to his benefit in the way of estoppel, though the fact might be considered in support of a charge that his removal or reduction in rank was capricious or arbitrary.

We note that in so far as the amended answer, which makes the specific charge is concerned, there appears to be no reply thereto, nor is this charge made the subject of motion to strike, nor does there appear to have been demurrer filed. However this may be, it seems as if the chancellor ruled on the motions to strike and demurrers as applicable to all pleadings, and the issues were in the main raised by previous pleadings.

It was further plead in the only reply filed, or at least which appears in the record, that none of the ordinances adopted by the council provided that the age limit should be 50 years, and further that none of the ordinances adopted since the enactment of the statutes under consideration, made any provision with reference to civil service governing the qualifications of police officers. This being true, it is argued that the council had no right to impose the age restriction.

These ordinances, particularly the one of February, 1930, makes no reference to the age of an applicant for police service, though it contained some of the expressed

qualifications, and disqualifications as set out in Section 3351-2. Whether the age limit was omitted for any particular reason to aid or benefit certain applicants, we cannot say. However, under all rules of construction, such emphatic prohibition as is contained in the statute, should not be overlooked, though it be omitted from an ordinance attempting to fix qualifications. The portion of the statute fixing the minimum age for eligibility must be read into, or in connection with the ordinance.

The general rule is that in the absence of a constitutional provision safeguarding it to them, municipalities have no right to self-government which is beyond the legislative control of the state. There are states in the Union wherein the right of "home rule" is established or recognized in their constitutions. Section 156 of our constitution provides that "the organization and powers of each class shall be defined and provided for by general laws, so that all municipal corporations of the same class shall possess the same powers and be subject to the same restrictions." This mandate has been carried into effect by the acts relating to the various classes of cities. The word "powers," as used in the section, has been construed to refer to and cover both governmental and municipal matters. Klein v. Louisville, 224 Ky. 624, 6 S. W. (2d) 1104.

Here it may be said that it was not within the power of the city to ignore the restriction contained in the statute as to the age limit. We are not called upon to defend this provision, or undertake to advance reasons for its insertion in the act. It would not be difficult to conceive that due to the arduous and exacting duties enjoined, the legislature might have well thought that one having reached or passed a certain age limit was physically unfitted for duty. Deodati v. Kern, 280 N. Y. 366, 21 N. E. (2d) 355, 122 A. L. R. 1446. The appointing council having failed to incorporate the age limit in its ordinance, or having failed to observe it in making the appointment, neither it, nor its successor, should be estopped to assert the invalidity of its act, and certainly the appellant should not be heard to plead estoppel, when he aided the corporation in violating the provision of the law, resulting in benefit to himself. In Stolzy v. City of Henderson, 225 Ky. 358, 8 S. W. (2d) 629; City of Middlesboro ex rel. Minton v. Gibson, 225

Ky. 120, 7 S. W. (2d) 285, we held, in substance, that the council could not evade or nullify the prevailing laws, by failing in their ordinances to comply with them.

In the case of Meglemery v. Weissinger, 140 Ky. 353, 131 S. W. 40, 41, 31 L. R. A., N. S., 575, we held that the appointment by a fiscal court of one of its members to the position of bridge commissioner was void, and that being void it could not be validated by acts of ratification. This latter conclusion is responsive to one plea on the part of appellee. In Patterson v. Miller, 2 Metc. 493, 59 Ky. 493, we held:

"But where a person is constitutionally ineligible to an office, he will not be the lawful incumbent thereof, although he may be elected, obtain a certificate of his election from the examining board, take the oath of office, and execute the bond prescribed by law." See 46 C. J. p. 950, Section 60. People ex rel. Lane v. Lindblom, 215 Ill. 58, 74 N. E. 73.

The statute provides that members of the police force "otherwise qualified under this law shall hold their positions during good behavior." The term "otherwise qualified" means such qualifications as are epecifically provided by the statute. These qualifications are in addition to such as may be or are developed by the examination provided. The council, and not the examining board, is the body which passes on the statutory qualifications.

In City of Middlesboro ex rel. Minton et al. v. Gibson, supra, we held that the attempt of the outgoing board to adopt an ordinance declaring an applicant for chief of police to have had the proper qualifications without examination to be ineffectual, and the mayor refusing to recognize Minton's attempted appointment valid, we held that the mayor was correct. The appointing authorities in the instant case could no more waive the age qualification, than in the case cited they could validly waive the examination requirement.

We have held in several cases that one who undertakes to recover an office must not only allege, but if necessary prove, his eligibility to hold the office. The exception to the rule applies to personal characteristics. Dorian v. Walters, 132 Ky. 54, 116 S. W. 313; Baker v.

Combs, 194 Ky. 260, 239 S. W. 56. Appellee's pleadings fail in this respect.

The point under discussion is answered in the recent case of White v. City of Hopkinsville, 280 Ky. 661, 134 S. W. (2d) 236, 237, before us on the question of the validity of the appointment of appellant who had been removed from the police roster because he had never been "regularly appointed, elected or confirmed to such [position]." We found the question to be "the right of the city to terminate his services as patrolman or policeman of the city, as was done by the latter's ordinance referred to," that is, without preferment of charges.

The opinion cites the facts and circumstances under which appellant was claiming his right to continue to serve. He had been appointed in January, 1936, to serve as special policeman until December 15, 1936. He was on active duty until the last-named date, then dropped out for one month. He resumed his duties "but how and in what manner is not shown," and continued until the removal ordinance of 1938, which brought about the litigation. We held that "by continuing in the service after the expressed termination of his designation appellant was only a de facto officer * * * and could not by his continuing to serve convert himself into an appointee 'during good behavior,' which class of appointees, as we have seen, are the only ones to whom the immunity of the statute against removal is extended." Directly in point are People ex rel. Lane v. Lindblom, 215 Ill. 58, 74 N. E. 73, McCarthy v. Board of Fire Com'rs, 37 Cal. App. 495, 174 P. 402.

It is not to be assumed that all the facts as detailed in the White case, upon which removal in the manner shown was upheld, are common to this case. It is cited to demonstrate that the proper authorities may remove, without hearing, one who does not clearly bring himself within the immune class, and we think the lack of proper statutory qualifications would thus eliminate appellee from the class.

As being persuasive, and perhaps of conclusive effect, we quote from the White case:

"We have not mentioned other questions that might be discussed, among which is that according to ap-

pellant's own testimony he was ineligible to even the character of appointment he received at the time Melton designated him, since the statute requires that members of the police force 'shall be qualified voters of the city in which they are appointed'; when the facts are, as stated by appellant, that at the time of his designation he had been a citizen of the city for only about one week. * * * Summarizing, our conclusions are that under the facts adduced there never was a valid appointment of appellant to the position of policeman of the city of Hopkinsville.''

There is left for discussion only the question of the power of the authorities of the city under that part of Kentucky Statutes, Section 3351a-2, which reads:

"However, the provisions of this act shall not prevent the board from decreasing the number of firemen and policemen as the said board may from time to time deem proper.''

It is unnecessary for us to go into detail in analyzing the various cases dealing with this excerpt. City of Middlesboro v. Byrd, 247 Ky. 348, 57 S. W. (2d) 49, is one; Marcum, Mayor, etc., v. Boggs, 258 Ky. 401, 80 S. W. (2d) 36, 37, is another and wherein we wrote:

"The act of the mayor and commissioners in reducing the force from six to four was a matter placed by Section 3351a-1 entirely within their discretion, with which the courts should not interfere unless it were clearly abused.''

An example of what constitutes an abuse, by way of subterfuge, to rid the force of one or more for the purpose of favoring another or others, is manifested in Glass v. Frankfort Council, 262 Ky. 471, 90 S. W. (2d) 700.

Most of the cases dealing with this subject are mentioned in the White case, supra, in which it was commented that those cases "also recognized the right of the Commissioners to, in good faith, reduce its number of policemen and thereby drop from service such abolished positions'' which right is preserved by the quoted statute.

Giving to the pleadings of appellant the fullest

force and effect, in the light of the pleadings of appellee, there was an issue as to whether or not the reduction of the force by abolishing four others, was or not in good faith. Looking to the pleadings, exhibits and the opinion of the court, we find that the force was, at the time appellee's office was abolished, reduced by four. There were some interim appointments on emergency occasions, but when the chancellor wrote his opinion he did not indicate that there had been any increase in the force, or if such, there was a show of ulterior motive. He based his opinion on the "right of seniority," and it may be concluded that the judgment was based on a like conclusion, otherwise he would hardly have ruled as he did, at least on the issue which we have lastly discussed.

We are of the opinion that the court erred in granting the two-fold injunctive order, one prohibitory in nature, the other mandatory. The court also erred in overruling the defendant's demurrer to the petition as a whole; also in striking from the answer and amended answer such portions thereof as presented the defensive matters indicated, and likewise overruling demurrer of defendants to the answers as a whole.

Judgment reversed, with directions to set aside the injunctive orders and for proceedings not inconsistent with this opinion.