Bobby BECKHAM, Gerald Hardcastle, John Payne, George A. Scott, Edward L. Word, J.R. Brown, John A. Cook, Bernie Cox, William Hendrick, Mark Johnson, Alexander Maxwell, Raymond Raymer, Bill Waltrip, John Watts and Jerry Wells, Appellants,

v.

CITY OF BOWLING GREEN, Kentucky; Charles Hardcastle, Mayor; Patsy Sloan, Elwood Janes, Charles Wilson, and Alan Palmer, City Commissioners, Appellees.

No. 86–CA–2675–MR.

Court of Appeals of Kentucky.

Dec. 4, 1987.

Discretionary Review Denied by Supreme Court Feb. 23, 1988.

James H. Lucas, Janet S. Jobe, English, Lucas, Priest & Owsley, Bowling Green, for appellants.

David Lanphear, Safford, Satterfield & Lanphear, Bowling Green, for appellees.

Before HOWERTON, C.J., and LESTER and GUDGEL, JJ.

HOWERTON, Chief Judge.

The appellants are officers of the City of Bowling Green Police Department. They appeal from a judgment of the Warren Circuit Court upholding the enactment of an ordinance by the Board of Commissioners of Bowling Green, which reduced their salaries. We agree with the decision of the trial court and affirm.

On June 17, 1986, immediately prior to commencing the 1986/87 fiscal year, the Bowling Green Board of Commissioners adopted Ordinance No. BG86–30 fixing the salaries of the city's employees. As part of the ordinance, all sergeants and captains in the police department were upgraded four levels, substantially increasing their salaries. Some members of the fire department had traditionally been paid on the same level as the sergeants and captains in the police department, but the ordinance failed to upgrade their positions. These fire fighters complained to the city commissioners.

After much consideration by the commissioners and public exposure in the press and broadcast media, the commissioners adopted Ordinance No. BG86–50 which reduced the police sergeants and captains two pay grade levels and increased the respective fire fighters two levels, thus restoring parity in compensation.

It is undisputed that both ordinances were properly enacted in form and procedure. Both parties agree that the enactment of Ordinance No. BG86–50, reducing the pay of the sergeants and captains of the police department, was in no way a disciplinary action against an individual officer or the entire group of officers. However, the police officers maintain that Ordinance No. BG86–50 is invalid for the following reasons: (1) the city cannot reduce the pay grade of members of its police force absent disciplinary justification as delineated in KRS 95.450; (2) the members of the police department have a property interest in their employment and rate of compensation which cannot be taken away without due process of law; and (3) the city commissioners violated the Kentucky Open Meetings Act in its enactment of the ordinance.

The City of Bowling Green is a city of the second class pursuant to KRS 81.010(2), and it derives its power to act from the Home Rule Statute codified in KRS 82.082. The city is authorized to "exercise any power and perform any function within its boundaries, . . . that is in furtherance of a public purpose of the city and not in conflict with a constitutional provision or statute." KRS 82.082(1). More specifically, KRS 83A.070 requires the city to fix the compensation for its officers and employees.

The police officers ask us to find that KRS 95.450 prohibits the reduction of police officers' salaries absent disciplinary charges. KRS 95.450 is entitled "Discipline of Members," and section (1) provides:

Except as provided in subsection (5) of this section no *member* of the police or fire department in cities of the second and third classes or urban-county government shall be reprimanded, dismissed, suspended or reduced in grade or pay for any reason except inefficiency, misconduct, insubordination or violation of law or of the rules adopted by the legislative body, and only after charges are preferred and a hearing conducted as provided in this section. (Emphasis added.)

Subsection (5) pertains to bringing charges on the basis of probable cause and suspensions pending a hearing.

We believe, and so hold, that KRS 95.450 applies to disciplinary procedures and was intended to provide due process in such procedures, thus preventing arbitrary punishment of individual officers. *Callis v. Brown*, 283 Ky. 759, 142 S.W.2d 675, 677 (1940). Every case cited by the police officers in support of their contention concerns the discharge or punishment of individual officers. The present case simply does not involve the discipline of individual officers or even a group of officers. As such, we must uphold the city's right and duty to fix the compensation of its employees based on the resources available to it.

All parties cite the case of *Campbell v. Meredith*, Ky., 239 S.W.2d 979 (1951). Campbell was a civil service employee in Corbin, Kentucky, filling the position of city clerk. When Corbin adopted the city manager form of government in 1950, it adopted an ordinance reducing the clerk's salary. Campbell sued Mayor Meredith and others to prevent the reduction. The trial court upheld the city officials, but the Court of Appeals reversed on the basis of the civil service statutes.

KRS 90.380 provides:

The city legislative body shall fix by ordinance the number and classification of city employes, and the salaries for each classification. When the number of employes and their classification has been fixed by ordinance, no employe shall be dismissed, suspended or reduced in pay or grade for any reason except that set out in KRS 90.360.

The applicable part of KRS 90.360 is section (1) which reads:

No employe in the classified service of a city of the second or third class shall be dismissed, suspended or reduced in grade or pay for any reason except inefficiency, misconduct, insubordination or violation of law involving moral turpitude, or, in a city of the third class, violation of any rule adopted by the city legislative body or civil service commission.

The court went on to hold that Campbell's pay could not be reduced under the circumstances in this case.

■ The opinion in *Campbell, supra,* at 980, does state the general law, which is: "Generally, unless prohibited or restrained by law the salary or compensation of an employee of a municipal corporation may be increased or diminished during the term or period of employment." The general rule is what must apply in the case at bar, and to this extent we agree with the appellees' use of the citation.

We are not certain what our Supreme Court would decide today if it had another *Campbell* situation. The case has not been overruled or distinguished on the basis of facts or new statutes, but we are convinced that *Campbell* is not controlling in this situation. *Campbell* involved an employee, not a group, and the civil service statutes (KRS Chapter 90) can be distinguished from the police department statutes (KRS Chapter 95). Also, the general power and authority of cities such as Bowling Green have been expanded since 1951.

The title of KRS 90.380 is "Number of employes—Salaries—Protection from dismissal, suspension or reduction—Abolishment of office or position—Reinstatement." This and other statutes were enacted to prevent cities from dealing unfairly with their employees. This, and most similar statutes, are to protect individual employees from arbitrary action affecting their employment. KRS 90.380(1) authorizes a city to create civil service positions and fix the salaries, and then for good or bad, it provides that "no employe shall be ... reduced in grade or pay for any reason except that set out in KRS 90.360." The latter statute applies to the procedures and grounds for "dismissal, suspension or reduction" of a civil service employee.

KRS 95.450, *supra,* controls the "discipline of members" of the Bowling Green Police Department. Chapter 95 formerly contained section .430 which covered the fixing of salaries in the Bowling Green Police Department. It was repealed in 1980, but it never contained language comparable to KRS 90.380. Subsection (5) of

KRS 95.430, prior to repeal, merely read, "[t]he legislative body shall, by ordinance, fix the salaries of the members of the police and fire departments...."

■ The fixing of city salaries (possibly all city salaries) is now controlled by KRS 83A.070, which was enacted in 1980. KRS 83A.070(1) now reads:

The legislative body of each city shall by ordinance fix the compensation of every elected city officer not later than the first Monday in May in the year in which the officer is elected. An elected officer's compensation shall not be changed after his election or during his term of office.

The terms of elected officers in cities is generally two to four years or for a limited time. The permanent officers and employees are covered by KRS 83A.070(2) which reads: "[t]he legislative body of each city shall fix the compensation of each appointed city officer in the ordinance that creates the office and may change it by ordinance." The general rule, as stated in *Campbell, supra,* would clearly apply to this statute, and the City of Bowling Green has the authority to raise or lower the salaries of its police officers. There is absolutely no evidence of any discrimination against any individual or group of individuals in this case. The decision to raise and then lower the salaries may or may not have been politically unwise, but it was certainly lawful and within the power of the Board of Commissioners of the City of Bowling Green.

■ The police officers' second contention, that they have a "property interest" under KRS 95.450 in their rate of compensation, is without merit. Our reasoning on the first issue is dispositive of this issue. The statutes simply do not prohibit a nondiscriminatory reduction in pay or grade by rank within the department.

■ Lastly, the police officers contend that the city commissioners violated the Kentucky Open Meetings Act in its enactment of BG86–50. The Open Meetings Act provides:

All meetings of a quorum of the members of any public agency at which any public business is discussed or at which any action is taken by such agency, are declared to be public meetings, open to the public at all times.... KRS 61.810.

The trial court noted that the entire matter concerning the salaries was publicly aired in the press and broadcast media. There was testimony at trial that the police officers, themselves and through counsel, engaged in discussions with the commissioners regarding the reduction of their salaries. Although a quorum of the commissioners may have discussed the issue among themselves at a gathering other than a regular meeting, the trial court specifically found that no secret meetings were held in violation of the Open Meetings Act. As we do not believe this finding is clearly erroneous, we will not disturb it on appeal. *Avritt v. O'Daniel,* Ky.App., 689 S.W.2d 36 (1985); CR 52.01. The action taken in adopting the ordinance was completely open, and the reasons for its passage are clearly understood.

The judgment of the Warren Circuit Court is affirmed.

All concur.